In re Arbitration Between TODD SHIPYARDS CORPORATION

and

CUNARD LINE LIMITED,

American Arbitration Association Case No. 13–110–0658–84.

Civ. A. No. 89–248 (AJL).

United States District Court, D. New Jersey.

March 21, 1989.

Frederick K. Becker, Wilentz, Goldman & Spitzer, Woodbridge, N.J., for Cunard Line Ltd.

Kenneth Rosen, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., and Allan J. Joseph, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for Todd Shipyards Corp.

## OPINION AND ORDER

LECHNER, District Judge.

This matter is before the court on a motion brought by Todd Shipyards Corporation ("Todd") to transfer this action filed by Cunard Line Limited ("Cunard") to the federal district court for the Northern District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons which follow, the motion is granted.

*Background* [1]

Todd is a New York corporation engaged in the business of shipbuilding. Its principal place of business at the present time is in Seattle, Washington.[2] Todd currently conducts its shipbuilding activities in Seattle, Washington, Los Angeles, California

---

1. Several of the facts set forth below are supported by affidavits submitted by the parties in connection with this transfer motion. References are sometimes made herein to the exhibits to various affidavits which contain, among other things, orders making up part of the extensive record in this Todd/Cunard litigation.

2. At the time the agreement which gives rise to this dispute was signed (in 1983), Todd's principal place of business was in New York. Subsequently, Todd moved its headquarters to New Jersey where it was located at the time Todd filed for protection under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Act"). Todd currently maintains a small office in New Jersey primarily to monitor the bankruptcy proceedings.

and Galveston, Texas. Todd previously conducted shipbuilding activities in San Francisco, California (including the work on behalf of Cunard which is the subject of this dispute), but in July, 1987 decided to close that shipyard and did so within a few months.

Cunard is an English corporation with its principal office in the United States located in New York, New York. Cunard is engaged in the pleasure cruise business and does business in various seaport cities including San Francisco, where it engaged Todd's Shipyards to do certain work.

On September 22, 1983, Todd and Cunard entered into a contract under which Todd agreed to repair and convert Cunard's cruise ship, the M.V. Sagafjord. Section 21 of the contract required arbitration of "any and every dispute, difference or question between the parties ... relating to this agreement...." Exhibit A to the Affidavit of Allan J. Joseph (the "Joseph Aff.") (contract attached as Appendix A to Todd Complaint filed in Northern District of California on June 18, 1984 (the "Complaint")). The arbitration clause further specified that any arbitration was to occur in New York City, and to be governed by New York law. According to Cunard, the forum-selection clause represented a negotiated compromise between the parties, with Cunard proposing that any arbitration be held in London and Todd countering that it should be held in California. The parties ultimately agreed that arbitration was to take place in New York. Cunard's Brief, p. 15.

The work performed by Todd on the Sagafjord was done at its shipyard in San Francisco in late 1983. Disputes arose between the parties relating to both the scope of the original work and additional work on the ship which, according to Todd, it was directed or compelled to perform. Todd's Brief, p. 4–5. On June 18, 1984, Todd filed an action in the Northern District of California against Cunard and the ship *in rem* [3] which was assigned to the Honorable Spencer Williams, U.S.D.J. The action is based upon the admiralty and diversity jurisdiction of the court under 28 U.S.C. 1333, and seeks damages and arrest of the vessel as security. Todd's complaint also pleaded the arbitration clause of the contract and specifically reserved the right to seek arbitration of Todd's claims. Complaint, ¶ 13.

According to Todd, venue for the action was authorized by Section 8 of the Federal Arbitration Act (the "Act") [4] and by 28 U.S.C. § 1391.[5] *Id.* As discussed more fully below, Cunard has argued Todd did not bring the action under the Act and nowhere in its complaint did Todd reference the Act. It was not alleged by Cunard in the California action, however, that it was necessary, as a pleading matter, to specifically invoke Section 8 of the Act. Cunard has never questioned the propriety of the California lawsuit; it has neither disputed jurisdiction in that action nor attempted to seek a dismissal.

To avoid arrest of the ship, Cunard filed with the California court a bond of approximately $9 million; the bond is still in effect. In July, 1984, Todd informed Cunard it would file a demand for arbitration pursuant to Section 21 of the contract. Accordingly, Cunard and Todd stipulated the California matter should be stayed pending

---

3. This action is entitled *Todd Shipyards Corporation v. Cunard Lines Ltd. and M.V. Sagafjord, Her Engines, Boilers, Etc.*, Action No. C–84–3674 SW.

4. That section provides:
   If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admi-

ralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

5. In furtherance of its argument venue was authorized in California pursuant to 28 U.S.C. § 1391, Todd notes "(1) the ship was to be found within the district for purposes of arrest, (2) that is the district in which the claim arose, and (3) Cunard, as a foreign corporation, could be sued in any district." Todd's Brief, p. 5.

arbitration of the dispute between the parties as provided in Section 21 of the contract. Judge Williams entered a stay order pursuant to the stipulation and the parties proceeded to arbitration.[6] Todd Brief, p. 5.

On September 11, 1984 Todd filed a demand for arbitration with the American Arbitration Association in New York City and served a copy on Cunard. Because the arbitration clause of the contract specified New York City as the site of arbitration proceedings, the proceedings began there. In January, 1985, the arbitration panel (consisting of three members) convened and conducted an informal procedural hearing at the office of the American Arbitration Association in New York City. According to Cunard, at that hearing the parties agreed the arbitration would be held in New Jersey because it was the most convenient location. Todd, on the other hand, argues it was simply for the convenience of two of the arbitrators that it was agreed the first eight days of substantive hearings would be held in Newark, New Jersey.

The explanations from Todd and Cunard as to why most of the ensuing arbitration hearings were held at locations other than New York City differ considerably. Setting the parties' extreme characterizations aside, it is clear that most of the arbitration hearings were held in New Jersey, although a significant number of days of hearings were held in San Francisco. Of the nearly 150 days of hearings, approximately one forth of them were held in San Francisco[7] because the arbitrators concluded it was in the interest of convenience to witnesses. Cunard acknowledges hearings were held in California, but stresses it disputed such location and refrained from attending.[8]

A disagreement quickly arose between Cunard and Todd as to the meaning of the agreement covering the Sagafjord repair and conversion work. On April 2, 1985, Cunard instituted an action in this court (under Section 4 of the Act),[9] seeking a judicial determination of what constituted the contract; this motion was assigned to

---

**6.** Cunard has argued no order was actually entered directing arbitration because neither party ever refused to arbitrate and therefore intervention of the court to compel the parties to arbitrate was unnecessary. Cunard contends that, as a pro forma matter, the court merely signed a stipulation submitted by counsel as "So Ordered." In response to Cunard's technical argument—the validity of which is addressed below—Todd has argued that Judge Williams in fact issued just such an order following the May 1985 hearing on a Cunard motion.

The opinion of Judge Williams states:
Cunard's motion for order pursuant to 9 U.S. C. § 4 came before the court on May 15, 1985. At the hearing on that date, Cunard's motion was denied, *and the parties were ordered to arbitration.*
Order and memorandum of Judge Williams, dated June 4, 1985, Exhibit F to the Joseph Aff. (emphasis added).

Todd argues further that Judge Williams confirmed this directive to arbitrate in his later order denying Cunard's motion for reconsideration:
This Court's denial of Cunard's Motion under 9 U.S.C. § 4 necessarily constituted a determination that the underlying dispute between the parties was arbitrable in the manner Todd contended was appropriate. On this basis the Court *ordered the parties to arbitrate.*
Order of Judge Williams, dated August 5, 1985, Exhibit G to the Joseph Aff. (emphasis added).

**7.** Todd has argued the large number of hearings held in New Jersey was caused by uncooperative litigation tactics on the part of Cunard. It is Todd's suggestion that, based upon the residence of material witnesses, if Cunard had not been so uncooperative and vexacious the number of hearing days would have been more evenly split between California and New Jersey.

**8.** The fact that Cunard admits it boycotted the arbitration hearings held in California lends credence to Todd's argument that, although the parties agreed to arbitrate in general, the actions of Judge Williams referred to above (footnote 6) should be construed as *ordering* the parties to arbitrate. In any event, it is not crucial in this case whether Judge Williams in fact ordered the parties to arbitrate. *See Texas San Juan Oil Corp. v. An Son Offshore Drilling Co.,* 194 F.Supp. 396, 398 (S.D.N.Y.1961), discussed below.

**9.** Section 4 provides, in relevant part:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

the Honorable Frederick B. Lacey.[10] According to Todd, Cunard sought to have the court determine the contract was limited to the terms which Cunard was asserting and asked the court to order the arbitration panel to conduct further proceedings limited to Cunard's version of the contract. Todd's Brief, pp. 6–7. Cunard apparently alleged the panel was wrongly considering evidence of contractual obligations not explicit in the signed agreement. Cunard claimed this was a violation of the panel's authority and inconsistent with the contract's integration clause. *Id.*

On April 4, 1985, following a hearing on Cunard's complaint and motion, Judge Lacey ordered the action transferred to the Northern District of California,[11] noting:

> When your California people went before Judge Spencer Williams in San Francisco, there had to be some kind of an agreement or understanding about what you were going to arbitrate. The stipulation obviously envisaged that it was clear as between the two of you, two sides, that you were going to arbitrate a specific agreement....
>
> *It's further clear to me that when that stipulation was entered it was in contemplation of arbitrating and then going back before Judge Williams. So that you would get a confirmation of an award, you would do that to button it down.*
>
> I'm going to deny your application. This matter is going to be referred to Judge Williams where it should be decided in the first instance.

Exhibit D to the Joseph Aff., the April 4, 1985 hearing transcript, pp. 22–23 (emphasis added); Order of Judge Lacey, dated April 4, 1985.

It is clear Judge Williams is familiar with the Todd/Cunard dispute. Cunard filed voluminious papers before Judge Williams in support of its renewed motion for an order to compel arbitration under its version of the contract. Cunard argued the arbitrators had no authority to consider any evidence of contract rights or obligations beyond the express provisions of the eleven page signed agreement.

According to Todd, it set forth in papers in opposition to Cunard's motion its position "that the written agreement was incomplete and ambiguous, that the parties had supplemental understandings not inconsistent with the agreement which were directly relevant to their contractual obligations, and that New York law imposed implicit obligations on contracting parties which were also material to the dispute." Todd's Brief, p. 9. Todd asserted the arbitrators had the sole authority to resolve these issues and determine the composition and content of the agreement. *Id.*

Thorough filings were effected in connection with the motion before Judge Williams. Todd's Brief, p. 9.[12] On May 15, 1985, Judge Williams heard the matter and found in favor of Todd. He denied Cunard's motion and, according to Todd, ordered the parties to continue with the arbitration.

The underlying contract and arbitrability issues were revisited by Judge Williams when Cunard moved for reconsideration of the sanctions which he imposed on Cunard in connection with its motion under Section 4 of the Act.[13] Following a further hearing, Judge Williams affirmed his earlier order denying Cunard's motion and, according to Todd, again directed that the arbitration continue. The arbitration proceeded

---

**10.** The action was entitled *Cunard Line Ltd. v. Todd Shipyards et al.,* Civil Action No. 85–1553 (FBL).

**11.** After receiving the transfer of Cunard's action to the Northern District of California, Judge Williams consolidated it with Todd's prior pending action.

**12.** There were one hundred pages of briefing, one hundred thirty pages of declarations (with

exhibits), and over one hundred fifty pages of transcript excerpts from the arbitration proceedings. *Id.*

**13.** According to Todd, Cunard's brief in support of reconsideration sought to reanalyze the proper scope of the arbitration and the extent of the panel's authority under the contract's arbitration clause. Todd, in response, briefed these legal issues again. Todd's Brief, p. 10.

for the ensuing three years, with hearings held in New Jersey and in San Francisco.

As recounted in Todd's brief, on August 17, 1987, Todd filed for relief in new Jersey under Chapter 11 of the Bankruptcy Act. This resulted in the staying of all actions on any claims against Todd, including Cunard's counterclaims asserted in the arbitration. Todd's Brief, p. 9. Todd sought an order of the Bankruptcy Court modifying the automatic stay to allow the parties to conclude their arbitration. Although Cunard opposed that motion, in September, 1987, the Bankruptcy Court granted Todd's motion and allowed the arbitration to proceed.

Both parties filed extensive briefs on legal and factual issues raised in the arbitration, and final argument was held in April, 1988. On December 2, 1988, the American Arbitration Association issued the award of the panel. The total amount awarded Todd was $11,491,558. Cunard's counterclaims were denied in their entirety. Todd then petitioned the Bankruptcy Court seeking permission to confirm the award. On January 18, 1989, the Bankruptcy Court vacated the automatic stay thereby permitting the parties to proceed to confirm (or have vacated) the arbitration award.

On January 18, 1989, Todd filed its motion to confirm in the district court in San Francisco. Cunard filed this proceeding to vacate the award and sought to enjoin further proceedings on Todd's motion.[14]

On February 6, 1989, Todd filed the instant motion to transfer venue pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). The parties agreed the threshold issue of venue should be decided by this court and that the merits of arbitration award should await a determination as to proper venue. Todd has temporarily taken its motion for confirmation of the award off calendar in the

action before Judge Williams. Todd Brief, p. 12. For the several reasons that follow, this action is transferred to the Northern District of California.

*Discussion*

*Venue is Proper in California Under Section 8 of the Act*

■ The dispute between Todd and Cunard began when Todd commenced a lawsuit in the Northern District of California (invoking that court's diversity and admiralty jurisdiction); that lawsuit has been pending ever since. Todd argues the language of Section 8 of the Act makes clear that venue is proper in the Northern District of California for all post-award proceedings.[15] In relevant part, Section 8 states:

the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel ... according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

9 U.S.C. § 8. The plain language of Section 8 (i.e., "shall retain jurisdiction to enter its decree upon the award") indicates the Northern District of California is proper venue for post-arbitration proceedings. It appears Todd properly brought the California action in accordance with the rules applicable to admiralty proceedings. Cunard has never attacked jurisdiction in, or the propriety of, the lawsuit in the Northern District of California.

Cunard now argues Section 8 of the Act is inapplicable because Todd never specifically pled it in the California action and because the district court for the Northern District of California never ordered the parties to proceed to arbitration.[16] Cunard argues that Section 8 cannot be invoked

---

**14.** Cunard's application for a temporary restraining order was denied.

**15.** Todd further argues the language of Section 8 indicates that venue for post-arbitration proceedings lies exclusively in California. *See* discussion, *infra.*

**16.** As indicated above, however, at least two of the orders entered by Judge Williams in connec-

tion with Cunard motions indicate the parties (although they signed an appropriate stipulation) were in fact "ordered to arbitration." *See* footnote 6.

Furthermore, in response to Cunard's suggestion that Todd is merely attempting to "graft" Section 8 onto this dispute at this stage, Todd has pointed out it argued the applicability of Section 8 as early as April 4, 1985 when this

because Todd was never an "aggrieved party" in the sense that Cunard refused to proceed to arbitration.

As to Cunard's suggestion that Todd should have affirmatively pled Section 8 in its complaint, however, it is clear the Act does not itself establish subject matter jurisdiction of any sort. Todd had properly invoked the federal court's admiralty jurisdiction, and venue was proper in California under 28 U.S.C. § 1391. The complaint in the lawsuit before Judge Williams was never called into question until now. No case law exists to support Cunard's contention that Todd's complaint should have contained specific reference to Section 8 of the Act.[17]

Furthermore, Cunard's attempt to have this court draw a distinction between an affirmative order to arbitrate and a stay order entered pursuant to the parties' stipulation is not persuasive. No case law is offered which supports the proposition that Section 8 of the Act is only applicable when a party resists arbitration.[18] Indeed, the differences in the language contained in Section 4 of the Act undercuts Cunard's argument. Section 4, a provision aimed solely at addressing the problem of parties breaching their agreement to arbitrate, provides specific meaning to the term "aggrieved" ("a party *aggrieved by the alleged failure*, neglect, or refusal of another *to arbitrate* under a written agreement").

Cunard attempts to argue that "aggrieved" means the same thing in the context of Section 8 ("the party claiming to be aggrieved may [bring a proceeding to seize his adversary's vessel]"). Again, no case law has been offered to support either this construction of the term "aggrieved" as used in Section 8 (a section with more diverse purposes than Section 4), or the argument that Section 8 has no applicability when parties readily proceed to arbitration. The absence in Section 8 of the above underscored language contained in Section 4 suggests the term "aggrieved" in Section 8 has nothing to do with refusals to arbitrate. As the court explained in *Texas San Juan Oil Corp. v. An Son Offshore Drilling Co.*, 194 F.Supp. 396 (S.D.N.Y.1961):

Respondent contends that "aggrieved" as used in this section of the Act must be defined in the same way as "aggrieved" is expressly defined in Section 4 of the Act (i.e., aggrieved by the failure, neglect or refusal of another to arbitrate). Since the libel contains no allegation that libelant has demanded arbitration or that respondent has failed or refused to arbitrate, respondent questions its right to qualify under this section.

The purpose of Section 8 is to make available to a party, who had agreed to arbitrate in a maritime controversy, "the traditional admiralty procedure with its concomitant security" and at the same time to save his right to arbitration.... In light of this purpose the construction argued by the respondent would seem erroneous. It would force a party to choose between arbitration, on the one hand, and his ancient admiralty right of jurisdiction in rem or by foreign attachment on the other.... The courts have rejected this conclusion.

*Id.* at 398 (citations omitted).

The term "aggrieved" in Section 8 is thus used more generally, to refer to that party seeking to enforce rights against an-

same issue was before Judge Lacey. Todd's counsel specifically stated at that hearing that Section 8 applies and provides for proper venue in California. *See* Joseph Aff. Exhibit D, April 4, 1985 hearing transcript, p. 10.

17. It is noted in any event that Todd's complaint filed in the Northern District of California did reference the contracts' arbitration clause and reserve the right to arbitrate. Complaint, ¶ 13. *But see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983) (Act "does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331"); *Greenwich Marine, Inc. v. S.S. Alexandra*, 225

F.Supp. 671, 674 (S.D.N.Y.1964), *aff'd*, 339 F.2d 901 (2d Cir.1965) ("[t]he libel contemplated by Section 8 is one stating the substantive cause of action claimed to exist; reference in such a libel to the agreement to arbitrate is neither necessary nor appropriate.")

18. In describing the applicability of Section 8 of the Act, it would perhaps be more accurate to say it is only necessary to invoke its operative provisions where a party refuses to proceed to arbitrate after seizure of a vessel has occurred or, as here, a party disputes jurisdiction upon completion of the arbitration.

other by securing property in a court proceeding (based on admiralty jurisdiction), but preserving the right to arbitrate. *See The Sydfold*, 25 F.Supp. 662, 663 (S.D.N.Y. 1938) (Section 8 makes arbitration merely "a phase of the suit in admiralty").

Cunard also argues even if Section 8 is applicable and venue is proper in the Northern District of California, such venue is permissive, not mandatory. Cunard then points to Section 10 of the Act as support for its argument that venue would also be proper in this court. Section 10 provides, in relevant part:

> the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration....

9 U.S.C. § 10. Cunard further argues the award "was made" in New Jersey where most of the the hearings were held.[19]

To the extent Cunard can demonstrate the award "was made" in New Jersey, an issue exists as to whether the language in Section 8 provides for exclusive venue in California. Cunard argues that, at most, Section 8 provides for permissive venue [20] in California and that the existence of Section 10 (and an award made in New Jersey) counsels in favor of venue in this court.

Todd argues the plain language of Section 8, as well as the overall structure of the Act, compels the conclusion venue under Section 8 is mandatory. Todd's Reply Brief, p. 5. Research indicates an absence of any case authority directly on point.

Although at least two textual arguments exist which support Todd's interpretation,[21] for the reasons that follow it is not necessary to resolve this issue of apparent first impression concerning the interrelationship between Sections 8 and 10 of the Act. Even if it is assumed, as Cunard argues, (1) that Section 8 does not require venue in California (i.e., the provision is permissive),[22] and (2) that Section 10 would create

---

**19.** Todd concedes there is case authority to support Cunard's interpretation of venue under Section 10. Todd Brief, p. 17 n. 11 (citing cases). It argues, however, that the cases relied upon by Cunard may be distinguishable from this case, "where a significant part of the hearings were held elsewhere (in San Francisco), the award was issued elsewhere (in New York), and the arbitration clause of the contract specifies venue for the proceedings elsewhere" (in New York). *Id.*, (citing *T & R Enterprises v. Continental Grain Co.*, 613 F.2d 1272, 1279 (5th Cir. 1980)). Even if it is assumed the award "was made" in New Jersey, other grounds exist which form the basis of this decision for transferring this matter.

**20.** Cunard cites in its brief several cases stating that venue under the Act is "permissive." These cases, however, discuss §§ 9, 10 and 11 of the Act, whose very terms imply that the venue thereunder is non-mandatory. None of the cases cited by Cunard involved a pending admiralty action *in rem* commenced under Section 8 of the Act. *See NII Metals Services, Inc. v. ICM Steel Corp.*, 514 F.Supp. 164 (N.D.Ill.1981); *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F.Supp. 573 (D.Neb.1978).

**21.** First, the language of Section 8 is capable of being read as providing for exclusive venue in California (the court "shall retain jurisdiction to enter its decree upon the award.") If this jurisdiction were intended to be merely permissive, Congress could have used words such as those contained in Section 10 (the court "may make an order vacating the award.")

Second, although there is no authority explicitly discussing the relationship, or perhaps tension, between Sections 8 and 10 of the Act, the language "notwithstanding anything herein to the contrary" can be reasonably read to mean that the court exercising admiralty jurisdiction shall have jurisdiction to finalize an arbitration even though it occurred elsewhere and Section 10 would have conferred concurrent jurisdiction on the court located where the award "was made."

As further support in favor of Todd's construction of Section 8—that it creates exclusive venue for post-award proceedings—it is noted the court with *in rem* jurisdiction over the ship as security for the award would be the appropriate venue for any proceedings to enforce judgment on the award. *See generally Greenwich Marine, Inc. v. S.S. Alexandra*, 225 F.Supp. 671, 674 (S.D.N.Y.1964), *aff'd*, 339 F.2d 901 (2d Cir. 1965) ("The purpose of Section 8 is to permit a party having an admiralty cause of action to commence a suit in admiralty, despite an agreement to arbitrate, so that 'the vessel or other property' may be seized and held as security until the arbitration is concluded").

**22.** Although Section 8 states that the Caliornia district court "shall retain jurisiction," Cunard's argument on this issue might be supportable based upon the technical distinction between retaining jurisdiction and exercising it. I am not necessarily persuaded by such a textual ar-

concurrent venue in New Jersey because the arbitration award "was made" there, I conclude the facts of this case compel the conclusion that this action should be transferred[23] to the Northern District of California, where there exists a prior pending consolidated action and a federal district judge familiar with this litigation.

*Prior Pending Action*

■ Todd correctly argues venue in this court for Cunard's motion under Section 10 of the Act is permissive at most,[24] and that this action should be transferred to the Northern District of California where there is a prior pending consolidated action. If a post-award proceeding brought in one court may be more appropriately heard in some other court where venue would also lie, the court has authority to transfer the matter under 28 U.S.C. § 1404(a).[25]

The concept of a transfer "in the interest of justice" includes and favors a transfer of a case to another jurisdiction where a related matter is pending. *See, e.g., Sanyo Electric Trading Co., Ltd. v. Masco Corp.*, 429 F.Supp. 1023, 1024 (D.Del.1977); *General Tire & Rubber Co. v. Jefferson Chemical Co.*, 50 F.R.D. 112, 115 (S.D.N.Y.1970); *Berg v. First American Bankshares, Inc.*, 576 F.Supp. 1239, 1243–44 (S.D.N.Y.1983) (transfer warranted in order to centralize in a single form all litigation concerning a certain transaction: "Even if it were improbable that the two cases would be consolidated upon transfer ... the fact that they are intimately related remains a

strong reason for transfer."). Moreover, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960).

There is a basic rule that absent special circumstances, the prior pending action has priority in venue. *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.1986). As explained in *E.E.O. C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir.1988), *cert. granted in part*, — U.S. ——, 109 S.Ct. 554, 102 L.Ed.2d 581 (1988):

> Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." ... Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." ... The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank.

*Id.*, 850 F.2d at 971 (citations omitted).

This rule was followed in this very case, when Judge Lacey transferred a case brought by Cunard in this court in the

---

gument, nor has that technical distinction been specifically advanced by Cunard.

**23.** Because I have concluded it is unnecessary to rule on the issues of (1) whether Section 8 creates mandatory venue in California and (2) whether venue would have been proper here pursuant to Section 10 because the award "was made" in New Jersey, transfer will be effected under 28 U.S.C. § 1404(a), discussed below, rather than under 28 U.S.C. § 1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

**24.** While it is debatable whether Section 8 is permissive, Sections 9 and 10 by their terms ("may make an order") are clearly permissive.

*See NII Metals Services, Inc., supra,* 514 F.Supp. 164; *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698, 706 (2d Cir.1985), *cert. denied,* 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 *reh. denied,* 475 U.S. 1151, 106 S.Ct. 1808, 90 L.Ed.2d 352 (1986) ("Once a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted.").

**25.** Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The issues of convenience of the parties and witnesses are discussed *infra.*

middle of the arbitration proceedings.[26] Over four years ago Todd and Cunard entered into an agreement to stay further proceedings in the California lawsuit pending arbitration. Implicit in that stipulation was the understanding that once the arbitration concluded with an award, any further court proceedings on the award would be conducted in that action. Any contrary understanding would have rendered the stay meaningless. *See NII Metals Services, Inc., supra,* 514 F.Supp. at 166.

As indicated above, Cunard did not question venue in the Northern District of California at the time of its original stipulation in July of 1984. Cunard has never sought to transfer Todd's action from the Northern District of California to New Jersey or any other district. In light of the foregoing, Judge Lacey previously determined that the Northern District of California is *the more appropriate venue for judicial proceedings concerning the arbitration and award.*

In its complaint in the action initially before Judge Lacey, Cunard alleged the arbitration was being conducted in Newark. Despite that asserted basis for venue, Judge Lacey transferred the action to the Northern District of California where Todd had a prior pending action. In support of the transfer order, Judge Lacey explained:

> I think as a matter of inter-district comity, since it's clear that jurisdiction was reserved under the statute, given the stipulation it envisaged further proceedings before him [Judge Williams]. I take it therefore that he should handle this "further proceeding."

Joseph Aff., Exhibit D, hearing transcript, p. 24; Order of Judge Lacey, dated April 4, 1985.

It appears Cunard never sought to appeal Judge Lacey's ruling. Cunard argues

that the prior pending doctrine has less application here because the California action has been "totally dormant for almost four years." In fact, issues relating to the Todd/Cunard arbitration have been before Judge Williams on at least two formal occasions and, as well, through periodic telephone conferences among counsel and the judge. Cunard itself has cited several cases standing for the proposition "courts will transfer an action based on a prior pending action in another jurisdiction when it is necessary to avoid the potential of inconsistent results, the waste of judicial resources and unnecessary, duplicative litigation of similar issues in separate forums." Cunard Brief, p. 36 (citations omitted).

In this case, I conclude that litigation of Cunard's motion to vacate the arbitration award in this court will create an unnecessary risk of a result inconsistent with Judge Williams' earlier rulings, and will result in a definite waste of judicial resources to the extent Judge Williams has already developed a familiarity with this litigation.

*Potential Forum Shopping*

According to Todd, the arguments made by Cunard in support of its present motion are "markedly similar to the arguments made in 1985 in support of its earlier motion to compel arbitration in accordance with its version of the contract. Both motions assert that the arbitrators have no legal authority to determine or recognize contractual obligations beyond the 11–page agreement signed by the parties." Todd Brief, pp. 23–24. Both motions assert that the integration clause of the contract precludes any imposition of liability against Cunard for violation of supplemental understandings of the parties, obligations imposed by governing New York law, or

---

**26.** In support of transferring that case, Todd recited the operative text of Section 8 of the Act to Judge Lacey and argued that:

> In our view, Your Honor, this sets forth in a special and preemptive section with regard to this type of proceeding. It says that the court, in this case the Northern District of California, obtains and retains jurisdiction, not only to direct the parties to go to arbitration, but

> also to enforce the award. Obviously implied in that we think is any matter which should arise in between.
> So that, Your Honor, we believe that this issue is properly one before the San Francisco Court.

Joseph Aff., Exhibit D, April 4, 1985 hearing transcript, p. 10.

additional commitments undertaken in the course of contract performance. *Id.*

Todd suggests Cunard brought this action in New Jersey in order to avoid Judge Williams' earlier decisions concerning the arbitration and to obtain a second bite at the apple. It argues federal courts have consistently recognized that deterrence of forum-shopping is among the most important considerations in resolving issues of competing venue. *See, e.g., Motion Picture Lab Techs. v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2d Cir.1986) (forum shopping is a "special circumstance" which should be considered in motions to transfer).

Cunard, on the other hand, argues the issues presented on Cunard's present motion to vacate are entirely different from the narrow issue presented to the California District Court in 1985. That court, according to Cunard, considered only whether the issue raised in Cunard's motion was arbitrable. It is not possible based upon the submissions to determine the potential overlap in the issues previously considered by Judge Williams and the issues raised by Cunard's present motion in this court. In any event, I agree with Todd that if Cunard contends the issues are different, Judge Williams is in the better position to determine whether any such differences could possibly warrant a result contrary to his earlier ruling.

*Convenience of the Parties and Witnesses*

Despite the fact that a prior pending consolidated action exists in this case (with a judge familiar with the complex record),

and the fact that a judge in this court already ruled that venue is appropriate in the Northern District of California, Cunard continues to present arguments why Todd's present transfer motion should not be granted. On the issue of convenience, Cunard argues that (1) the parties agreed to hold the arbitration in New Jersey [27] because it was the most convenient location and an agreement of the parties reflected in the arbitration clause should be given great weight and (2) the present contacts of the parties weigh in favor of post-arbitration proceedings in New Jersey rather than in California.

It is important to recognize that what is at issue at this stage of this litigation is not where a four-year arbitration (with hundreds of witnesses and documents to be presented into evidence) will take place. While Cunard has argued federal courts give weight to forum-selection clauses which are negotiated by contracting parties, (citing *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 758 n. 7 (3d Cir.1973)), Cunard cannot persuasively argue that to hold post-arbitration proceedings in California will deprive it of rights negotiated under the contract, which addressed where the *arbitration* would be held. Motions to confirm or vacate arbitration awards are essentially separate and distinct appellate proceedings involving largely legal issues. It cannot be anticipated that scores of witnesses will be required to attend several days of hearings in

---

**27.** Essentially, Cunard argues it and Todd have effectively modified Section 21 of the ship repair and renovation contract to provide for an arbitration in New Jersey rather than in New York. In addition to vehemently rejecting the contention that it agreed to arbitrate in New Jersey, Todd correctly notes that this is an odd argument to be made by Cunard, given that Cunard's major theory in this litigation is that the parties' understandings were completely and *exclusively* embodied in the 21 page contract.

As indicated above, the parties offer vastly different explanations as to why the arbitration hearings were held in New Jersey despite the forum selection clause which specified New York as the arbitration location. Todd argues

the arbitrators influenced the decision to hold hearings in New Jersey based on convenience to them and to certain witnesses—the same reason which justified some hearings in California. Cunard argues, on the other hand, New Jersey was mutually agreed to by Todd and Cunard because it was convenient in general. Based on the record (including the fact that hearings were held both in New Jersey and California) Todd's argument is more credible. Furthermore, if the parties (which were represented by competent counsel) had agreed to amend the forum selection clause in the contract, they could have, and perhaps would have, evidenced such an amendment to the agreement in a *written* instrument.

**1450**

San Francisco.[28] *See United Steel Workers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) (reviewing court should not undertake a plenary review of the merits of an arbitration award).

This venue dispute appears to involve merely a dispute concerning the convenience of litigation counsel to Todd and Cunard,[29] with counsel to Todd residing in California and counsel to Cunard located in New Jerey. The inconvenience to counsel should not be significant at this stage and, in any event, would not be minimized by denying Todd's transfer motion. Moreover, convenience of counsel is not treated as an important factor in transfer motions, *Ayers v. Arabian American Oil Co.,* 571 F.Supp. 707, 708 (S.D.N.Y.1983), and it certainly does not outweigh such factors as avoiding waste of judicial resources and eliminating potential for inconsistent results.

The parties will doubtless file large and significant submissions to a federal district court in support of their respective positions and will make court appearances (in all likelihood) on no more than a handful of occasions. To the extent the federal court agrees with Cunard's position, the matter may be remanded for further arbitration proceedings, which might involve the need for additional fact-finding. If this occurs, further arbitration would presumably occur at the location agreed upon in the contract or perhaps at the location most convenient to the witnesses. Accordingly, it does not appear Cunard's convenience arguments outweigh the factors weighing in favor of Todd's transfer motion: the existence of a

prior pending consolidated action and a judge familiar with the litigation.

The parties agree Todd's motion to transfer venue must be considered in light of the facts and circumstances as they presently exist. *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 819 (3d Cir.1982), *cert. denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983). As far as the relative contacts to California and New Jersey are concerned, Cunard argues that Todd's filing for bankruptcy in the Northern District of New Jersey weights in favor of holding post-arbitration proceedings here as well. It further notes that Todd keeps an office here. According to Todd, however, that office exists merely to monitor the bankruptcy proceedings. There has been no showing by Cunard that there is any substantive overlap in the bankruptcy and arbitration proceedings. Indeed, a member of the creditors committee in the Todd bankruptcy litigation has submitted an affidavit indicating that neither the committee nor the bankruptcy court would prefer to see the post-arbitration proceedings held here.[30] At most, the filing for bankruptcy is a single factor weighing slightly in favor of venue in this court. As discussed above, however, the counterveiling factors in favor of the Northern district of California are dispositive.

Cunard has also argued that Todd's current contacts with California are not what they used to be four years ago, when Todd had active shipyards in San Francisco. This is yet another attempt to engage the court in a superficial[31] balancing approach despite the existence of more compelling substantive reasons to transfer this matter

28. Cunard has cryptically suggested in a footnote that the "extraordinary result in this case ... may require oral testimony." Cunard's Brief, p. 21, n. 13. This argument is unpersuasive; it is neither supported by the record in this case (including the fact it has been Cunard's historical argument that this is a dispute strictly controlled by the terms of a twenty-one page contract), nor is it consistent with the traditional roles of federal district courts in post-arbitration proceedings. Furthermore, it is not clear the potential witnesses Cunard vaguely refers to would not be from San Francisco—where the work on the Sagafjord was performed.

29. To the extent Cunard has venue motives other than to minimize the inconvenience to, and expense of, counsel, there is a concern that Cunard is attempting to forum-shop and avoid the effect of the prior ruling of Judge Williams.

30. *Compare* the cases cited by Cunard, *Consumers Distrib. Co. v. Tele–Save Merchandising Co.,* 553 F.Supp. 974 (D.N.J.1982); *Herman v. Doug Frank Dev. Corp.,* 385 F.Supp. 767 (S.D.N.Y. 1974), which involved the bankrupt's effort to keep or move an action to the district in which it had filed for bankruptcy.

31. Cunard previously invited the court to count the number of days hearings were held in New

to a judge familiar with the issues and before whom a prior pending matter lies.

In point of fact, however, there are important contacts to San Francisco. In addition to the historical facts that San Francisco is (1) where all of the work occurred which gives rise to this dispute and (2) where Cunard's ship was seized, San Francisco is *currently* where (3) Cunard has a bond posted in federal court[32] (paid to liberate its ship) and (4) a judge familiar with the case resides.

*Conclusion*

For the reasons set forth above, this matter is transferred in my discretion pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of California.

SO ORDERED.

Jersey and San Francisco, and to conclude merely based upon the number of hearing days in New Jersey that venue is now more appropriate in this court.

**32.** Cunard's argument that the Northern District of California has no continuing interest in this matter is unavailing. In addition to the motions heard by Judge Williams, and the existence of the bond posted by Cunard, status conferences as recently as March 9, 1989 have occurred in that court.