AMERICAN CYANAMID CO. and American Home Products, Inc., Plaintiffs,

v.

ELI LILLY AND COMPANY and Shionogi & Co., Ltd., Defendants.

Civ. A. No. 95–2387 (WHW).

United States District Court, D. New Jersey.

Oct. 5, 1995.

John J. Francis, Jr., Shanley & Fisher, P.C., Morristown, NJ, for American Cyanamid Company, American Home Products Corporation.

William J. O'Shaughnessy, McCarter & English, Newark, NJ, for Eli Lilly and Company, Shionogi & Co. Ltd.

## *OPINION*

PISANO, United States Magistrate Judge:

Presently before the Court is the motion of defendants Eli Lilly and Company and Shionogi & Co., Ltd. to transfer venue to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). Opposition was filed by plaintiffs American Cyanamid Company and American Home Products Corporation. The Court heard oral argument on September 11, 1995. For the reasons stated herein, defendants' motion to transfer is granted.

## *BACKGROUND*

Plaintiff American Cyanamid Company ("Cyanamid") is a Maine corporation with its principal place of business in Wayne, New Jersey and is a wholly owned subsidiary of plaintiff American Home Products Company ("AHP"). AHP is a Delaware corporation with its principal place of business in Madison, New Jersey. Defendant Eli Lilly & Company ("Lilly") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Defendant Shionogi & Company ("Shionogi") is a Japanese corporation with its principal place of business in Japan.

This action centers on several patents involving a broad-spectrum oral antibiotic known as cefaclor. Lilly obtained the U.S. patent on the cefaclor compound in 1975 as the assignee of the inventor, Robert R. Chauvette, a Lilly scientist (U.S. Patent No. 3,925,372). Subsequently Lilly obtained the U.S. patents on the nucleus of the cefaclor molecule, also through an assignment by Chauvette (U.S. Patent Nos. 3,917,587 and 4,064,343). Lilly has marketed cefaclor under the brand name "CECLOR" since 1979, and the product is currently one of the largest selling antibiotics in the United States.

Lilly's patents on the cefaclor compound expired on December 8, 1992. In addition to these two patents, Lilly obtained several patents describing different aspects of the processes for making cefaclor. Lilly has utilized these processes in its manufacture of cefaclor since obtaining them in the 1970s. By the end of 1994, all of these patents similarly had expired.

The patents at issue in this case involve a process for making cefaclor that is distinct from that utilized by Lilly in its years of manufacturing CECLOR (U.S. Patent Nos. 4,160,085 and 4,346,218). Shionogi held the patent rights to this process until Lilly purchased them on April 27, 1994. Despite their ownership of the patent rights, neither Lilly nor Shionogi has ever utilized this process to manufacture cefaclor for commercial sale in the United States or anywhere else. These patents will expire on July 3, 1996.

Immediately after acquiring the cefaclor process patents ("Shionogi/Lilly patents") from Shionogi, Lilly filed an action in the Southern District of Indiana against three New Jersey drug companies—Cyanamid, Ze-

nith Laboratories, Inc. ("Zenith"), and Biocraft Laboratories, Inc. ("Biocraft")—and an Italian drug company—Biochimica Opos, S.p.A. ("Opos"). Lilly brought the action against the New Jersey defendants in connection with their importation and sale of cefaclor. Following the expiration of the original Lilly cefaclor patents, Zenith and Cyanamid obtained Food and Drug Administration ("FDA") approval to sell cefaclor in the United States, and both currently do so. Biocraft is awaiting FDA approval to manufacture and sell cefaclor domestically. Opos manufactures cefaclor in Italy and is the supplier of the cefaclor sold by Zenith and Cyanamid.

Lilly's Indiana suit seeks a declaratory judgment that the drug companies' importation of cefaclor manufactured by Opos infringes the Shionogi/Lilly patents. Conversely, Cyanamid's and AHP's New Jersey action seeks a declaratory judgment of non-infringement and unenforceability of the Shionogi/Lilly patents. Plaintiffs here also seek injunctive relief barring Lilly and Shionogi from asserting their patent rights against Cyanamid, AHP, or their suppliers and customers. Finally, the complaint asserts claims of unfair competition, tortious interference with contract, and common law conspiracy to engage in tortious conduct. Plaintiffs Cyanamid and AHP assert identical claims in this action and in their counterclaims against Lilly in the Indiana suit.

The defendants in the Indiana action moved the district court there to transfer venue to the District of New Jersey. On July 11, 1995, Chief Judge Barker of the Southern District of Indiana denied defendants' motion to transfer Lilly's suit to this district. Lilly and Shionogi now move this Court to transfer the New Jersey action to the Southern District of Indiana.

## DISCUSSION

■ Defendants' motion requests that the Court transfer this action to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) which provides that

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The party seeking a transfer under Section 1404(a) bears the burden of proving the propriety of the transfer. *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir.1989); *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982). Thus, Lilly and Shionogi undertake the burden to meet this test. *See Lony*, 886 F.2d at 633.

■ A court may transfer an action "only if the plaintiff had an unqualified right to bring the action in the transferee forum at the time of the commencement of the action." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). *See* 28 U.S.C. § 1404(a). Thus, the Court first will address whether this action could have been brought in the Southern District of Indiana.

■ This is a patent suit arising out of the laws of the United States, and subject matter jurisdiction is premised on 28 U.S.C. §§ 1331, 1338, and 2201–02. As such, 28 U.S.C. § 1391(b) and (c) is controlling to determine where venue is proper.[1] Section 1391(b) provides in pertinent part:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in 1) a judicial district where any defendant resides, if all defendants reside in the same State, 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or 3) a judicial district in which any defendant may be found, if there is no judicial district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Further, Section 1391(c) provides that a corporate defendant

---

1. Venue in a patent infringement action is governed by a specific statutory provision, codified at 28 U.S.C. § 1400(b). Venue in a declaratory judgment action for patent infringement, however, is governed by the general venue statute, codified at 28 U.S.C. § 1391(b). *Database America v. Bellsouth Advertising & Pub.*, 825 F.Supp. 1195, 1207 n. 24 (D.N.J.1993); *Dicar, Inc. v. L.E. Sauer Mach. Co.*, 530 F.Supp. 1083, 1088 (D.N.J. 1982).

"shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Whether the Southern District of Indiana is a forum in which this suit "might have been brought" therefore turns on whether the Indiana court could assert personal jurisdiction over the defendants. It is undisputed that Indiana may exercise personal jurisdiction over Lilly, an Indiana corporation with its principal place of business in Indianapolis. There is a dispute, however, concerning the ability of the Indiana court to subject Shionogi, a Japanese corporation, to its jurisdiction.

■ Before a federal court may exercise personal jurisdiction over a defendant, there must be notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum, as well as a basis for the defendant's amenability to service of summons. *Omni Capital Internal. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). Rule 4 of the newly amended Federal Rules of Civil Procedure confers jurisdiction over a non-resident defendant to the extent authorized by the law of the forum state. Fed.R.Civ.P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.), *cert. denied*, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990); *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F.Supp. 1294, 1301 (D.N.J.1990). Thus, the Court will look to Indiana law to interpret the meaning of due process for the purposes of determining the personal jurisdiction issue. Specifically, Rule 4 requires that the Court look to Indiana's long-arm statute to determine whether the Southern District of Indiana has the power to exercise jurisdiction over Shionogi. *L.H. Carbide Corp.*, 852 F.Supp. at 1431. *See Database America v. Bellsouth Advertising & Pub.*, 825 F.Supp. 1195, 1207 (D.N.J.1993).

■ Indiana's long arm statute is set forth in Indiana Trial Rule 4.4(A). The rule provides in pertinent part:

Any person or organization that is a non-resident of this state ... submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state,

. . . .

(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state.

Indiana Trial Rule 4.4(A). Courts construe the rule as extending the jurisdictional powers of a federal court sitting in Indiana to the outer limits of what due process permits. *Reed v. International Union of UAW*, 945 F.2d 198, 201 (7th Cir.1991); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425, 1432 (N.D.Ind.1994).

■ The basic tenet of due process analysis as it relates to personal jurisdiction was announced by the Supreme Court in *International Shoe v. Washington:* "[a defendant] must have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The critical inquiry is whether the defendant's conduct and connection with the forum state are such that defendant should reasonably anticipate being haled into the distant forum court. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

Federal courts in Indiana view the *International Shoe* analysis as setting forth two distinct inquiries for determining whether minimum contacts exist between the forum state and the non-resident defendant such that the court may exercise personal jurisdiction over the non-resident defendant. *See Boone v. Sulphur Creek Resort, Inc.*, 749 F.Supp. 195, 199 (S.D.Ind.1990). Further, the Indiana long-arm statute incorporates both of these tests into its requirements. *Reed*, 945 F.2d at 201. *See* Trial Rule 4.4(A)(3).

■ The first of these inquiries allows a court to exercise general personal jurisdic-

tion over a corporate defendant in "instances in which the continuous corporate operations with a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159. Under this general jurisdiction analysis, the court scrutinizes the nature and the quality of the defendant's contacts with the forum state and determines whether those contacts constitute "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). In general, the standard for establishing general personal jurisdiction is a high one. *Wilson v. Humphreys Ltd.*, 916 F.2d 1239, 1245 (7th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991); *L.H. Carbide Corp.*, 852 F.Supp. at 1433.

■ Under the second test, a court may exercise specific jurisdiction over a non-resident defendant only if the defendant possesses minimum contacts with the forum state and the controversy derives from those contacts. *Reed*, 945 F.2d at 201–02; *L.H. Carbide Corp.*, 852 F.Supp. at 1433.

■ Shionogi's contacts with the state of Indiana are sufficiently continuous and systematic for the district court there to exercise general personal jurisdiction over it. Shionogi has conducted extensive collaborative research and development activities with Lilly pursuant to a 1975 agreement between the two that was governed by Indiana law. Much of the activity with respect to the agreement was conducted in Indiana. Additionally, Shionogi has maintained a presence in Indiana through its subsidiary Shionogi Qualicaps, Inc., an Indiana based manufacturing company that was purchased from Lilly and employs thirty people.[2]

■ Indiana also may exercise specific personal jurisdiction over Shionogi by virtue of the transaction between Shionogi and Lilly that gave rise to plaintiffs' common law conspiracy claims. In that exchange, Shionogi assigned its patent to Lilly, an Indiana corporation. Plaintiffs' complaint alleges that if Lilly acquired any ownership rights in the Shionogi/Lilly patents, it was for the sole purpose of asserting them against plaintiffs and other cefaclor suppliers and tortiously interfering with the manufacture of the product in the United States. The present controversy, therefore, derives from Shionogi's minimum contacts with Indiana which are sufficient for the maintenance of specific personal jurisdiction over Shionogi.

Based on the foregoing analysis, the Court finds Shionogi's contacts with the state of Indiana to be sufficiently continuous and systematic such that the district court there may exercise general and specific personal jurisdiction over Shionogi. Therefore, this action could have been brought in the Southern District of Indiana.

■ An action may not be transferred, however, simply because the proposed transferee district is one in which the complaint might have been brought. While the decision to transfer an action rests in the discretion of the district court, *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989), transfer should not be liberally granted. *Kielczynski v. Consolidated Rail Corp.*, 837 F.Supp. 687 (E.D.Pa. 1993). In making its determination under Section 1404(a), the district court must undertake "a flexible and individualized analysis" that balances a number of case-specific factors. *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2243–45, 101 L.Ed.2d 22 (1988). Specifically, the court must look to the factors enumerated by the Supreme Court in *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843–44, 91 L.Ed. 1055 (1947). *See Ricoh Co. v. Honeywell, Inc.*, 817 F.Supp. 473, 479–80 (D.N.J.1993).

2. Cyanamid and AHP contend that the presence of Shionogi's subsidiary in Indiana may not subject Shionogi to personal jurisdiction there unless the corporate separation is a "pure fiction." The Court, however, declines to decide the jurisdictional issue on these grounds since the parties have presented no factual evidence regarding Shionogi's control over its subsidiary. The April, 1995 transaction with Lilly is by itself sufficient to subject Shionogi to specific personal jurisdiction in Indiana.

The *Gulf Oil* factors fall into two groups: those relating to the convenience of the litigants and witnesses and those affecting the public interest in the fair and efficient administration of justice. *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. Factors in the first group relate to the "private interests" of the parties and include the plaintiff's choice of forum, the ease of access to the sources of proof, the availability of compulsory process of unwilling witnesses, the cost of attendance of willing witnesses, and any other obstacles to a fair trial. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *Ricoh Co.,* 817 F.Supp. at 480. The second category consists of the "public interest" in the administration of the courts and the adjudication of cases: the relative backlog and administrative difficulties in the two jurisdictions, the fairness of placing the burden of jury duty on citizens of the state with the greater interest in the dispute, the local interest in adjudicating localized disputes, and the familiarity of the forum court with the applicable law. *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843–44; *Ricoh Co.,* 817 F.Supp. at 480.

Weighing these factors, the Court finds that both the convenience of the parties and witnesses and the interests of justice favor transferring this action to Indiana. In doing so, the Court also notes that the district court Indiana had the opportunity to place venue for Lilly's action in New Jersey and chose not to do so.

The presence of Lilly's action in Indiana, an appropriate alternative forum, affects greatly the determination of whether transfer of this action is appropriate. Cyanamid's and AHP's current claim for declaratory judgment of non-infringement is the mirror image of Lilly's Indiana infringement claim. Similarly, Cyanamid's and AHP's state court claims in this action are identical to the counterclaims they have asserted in the Indiana action.

The Supreme Court has admonished that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent." *Continental Grain Corp. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960). *See also Leibig v. Schneider Nat'l Bulk Carriers,* 1993 U.S. Dist. LEXIS 1681 (D.N.J.1993) ("[C]ourt is unwilling to sanction th[e] waste of judicial resources or to create the risk of inconsistent verdicts" that would result from duplicative trials in different fora).

Further, the general rule in the Third Circuit is that the first-filed suit should take priority in venue. *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988); *Todd Shipyards Corp. v. Cunard Line Ltd.,* 708 F.Supp. 1440, 1447 (D.N.J.1989). This is particularly true with patent cases. *Prevent, Inc. v. WNCK, Inc.,* No. 93–4516, 1994 WL 13826 (E.D.Pa.1994); *ATSPI, Inc. v. Sharper Image, Inc.,* 677 F.Supp. 842, 843 (W.D.Pa.1988). Cyanamid and AHP argue that the Court should not apply the "first-filed" rule mechanically and instead should focus on the totality of factors in deciding this motion. In this case, however, failure to apply the "first-filed" rule would result in nearly identical litigation in different fora. Such duplicative litigation is precisely what the Supreme Court and numerous lower courts have attempted to avoid.

Additionally, the Court cannot ignore the considerable time and judicial resources already invested in this case by the Indiana court. The court has devoted a substantial amount of resources in deciding the motions to transfer and for a preliminary injunction, and failure to apply the "first-filed" rule will ensure an unnecessary duplication of these efforts.

In this case, the interests of justice and judicial administration and economy weigh heavily in favor of transfer to the Southern District of Indiana. The retention of jurisdiction over the New Jersey action would cause a needless waste of judicial resources, as well as a loss of time and expense to the parties who will be forced to litigate nearly identical disputes in different fora. The interests of justice and judicial administration and economy compel the conclusion that one district court preside over these related cases. The Indiana district court is able to

accommodate the case management aspects of the two related actions, and counsel is free under local Indiana rules to submit a discovery plan for both cases. Accordingly, the Court grants the motion of Lilly and Shionogi to transfer this action to the Southern District of Indiana.

### CONCLUSION

For the reasons stated above, Eli Lilly & Company's and Shionogi and Company's motion to transfer this action to the Southern District of Indiana is granted.