**AMERICAN TELEPHONE & TELEGRAPH COMPANY,**
Plaintiff,

v.

**MCI COMMUNICATIONS CORPORATION and Pioneer TeleTechnologies, Inc., Defendants.**

**Civ. A. No. 90–66.**

United States District Court,
D. New Jersey.

May 3, 1990.

Alan E. Kraus and Michael R. Cole, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for plaintiff American Tel. & Tel. Co.

Robert M. Axelrod, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, N.J., for defendant MCI Communications Corp.

Edward J. Dauber, Greenberg, Dauber & Epstein, Newark, N.J., for defendant Pioneer TeleTechnologies, Inc.

## OPINION

LECHNER, District Judge.

The American Telephone and Telegraph Company ("AT & T") initiated this action against MCI Communications Corporation ("MCI") and Pioneer TeleTechnologies, Inc. ("Pioneer") (collectively the "defendants") for alleged violations of the deceptive practices provisions of section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), and violations of the New Jersey common law of unfair competition, interference with prospective economic advantage and product disparagement. Subject matter jurisdiction is founded on 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 & 1338(b) and 28 U.S.C. § 1332(a).

This opinion addresses the motions of the defendants to dismiss portions of the action or to transfer the entire action to the United States District Court for the District of Columbia.[1] Pioneer has moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).[2] MCI has made a *forum non conveniens* motion to transfer pursuant to 28 U.S.C. § 1404(a). MCI has also moved to dismiss AT & T's state law claims as preempted under federal law and to refer AT & T's claims of unauthorized customer switching to the Federal Communications Commission ("FCC") under the doctrine of primary jurisdiction.[3] AT & T

---

1. The defendants also submitted motions to stay discovery in this action pending resolution of the instant motions. *See* Memorandum in Support of MCI's Motion to Stay Discovery Pending Resolution of February 13, 1990 Motion to Transfer or Dismiss, dated 26 February 1990; Memorandum in Support of PTI's Motion to Stay Discovery, dated 7 March 1990; Memorandum of AT & T in Opposition to MCI's Motion to Stay Discovery Pending Resolution of MCI's Motion to Transfer or Dismiss, dated 2 March 1990; Certification of Philip R. White, dated 22 February 1990; Affidavit of Alan E. Kraus, dated 1 March 1990. The motions to stay discovery have been denied.

2. Pioneer submitted two briefs and one declaration in support of its motion: Memorandum in Support of PTI's Motion to Dismiss for Lack of Personal Jurisdiction, dated 6 March 1990 ("Pio-

neer Dismissal Brief"); Reply Memorandum of Law in Support of Pioneer TeleTechnologies, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, dated 20 March 1990 ("Pioneer Reply Brief") and Declaration of Dirk J. Winkel, dated 5 March 1990 ("Winkel Dec.").

3. In support of its motions, MCI submitted two briefs: Memorandum of Law of Defendant MCI Communications Corporation in Support of its Motion to Dismiss or Transfer to the District of Columbia, dated 12 February 1990 ("MCI Transfer Brief") and MCI's Reply Memorandum in Support of Motion to Dismiss or Transfer to the District of Columbia, dated 7 March 1990 ("MCI Reply"). MCI has also submitted six affidavits in support of its motions: Certification of Douglas J. Behr, dated 9 February 1990 ("Behr Cert."); Certification of Robert M. Axelrod, dat-

has opposed the motions of the defendants.[4]

At oral argument on 26 March 1990, MCI was directed to submit additional material in support of the transfer motion [5] and AT & T was given leave to submit material in opposition to the additional submissions of MCI.[6] The transfer motion was reargued in light of the additional submissions of the parties on 12 April 1990. However, upon the request of AT & T, further submissions were permitted in support of and in opposition to the transfer motion.[7] The final argument on the transfer motion in light of the complete record was held on 3 May 1990.

For the reasons which follow, Pioneer's motion to dismiss is denied. MCI's motion to transfer this action to the District of Columbia is granted. The other motions of MCI are not addressed and may be presented to the transferee court.

## I. BACKGROUND

### A. *The Parties*

AT & T is a New York corporation with its principal place of business in New York City. New Jersey, however, is the home of every major AT & T division and is the center of AT & T's long distance business. AT & T is the largest private employer in New Jersey and has more employees here than in any other state in the nation. Tutton Cert. at ¶¶ 5–7.

AT & T provides long distance telephone services through AT & T Communications, Inc. ("AT & T Communications"), which has its principal place of business in Basking Ridge, New Jersey. For at least fifteen years, AT & T's long distance activities have been operated from facilities in this state, including a core telecommunications facility in Bedminster, New Jersey. Each weekday, the Bedminster facility routs more than seventy five million long distance telephone calls throughout the nation and the world. In addition, AT & T maintains New Jersey facilities for research and off-shore or over-seas cable communications. *Id.* at ¶¶ 6–9.

MCI is a Delaware corporation with its principal place of business in Washington, D.C. MCI is the largest competitor of AT & T in the residential long distance telecommunications market. Although MCI is registered to do business and does business

ed 12 February 1990 ("Axelrod Cert."); Declaration of Jan Easom, dated 6 March 1990 ("Easom Dec."); Declaration of William Ebersole, dated 5 March 1990 ("Ebersole Dec."); Reply Certification of Robert M. Axelrod, dated 7 March 1990 ("Axelrod Reply Cert.").

**4.** In opposition to the motions of the defendants, AT & T submitted two briefs: Plaintiff AT & T's Memorandum in Opposition to Defendant MCI Communications Corporation's Motion *to* Dismiss or Transfer to the District of Columbia, received 27 February 1990 ("AT & T Transfer Opp.") and Plaintiff's Memorandum in Opposition to Defendant Pioneer TeleTechnologies, Inc.'s Motions to Dismiss for Lack of *In Personam* Jurisdiction and to Stay Discovery, dated 14 March 1990 ("AT & T Dismissal Opp."). In addition, AT & T submitted five affidavits: Certification of Merrill Tutton, dated 23 February 1990 ("Tutton Cert."); Certification of David J. Lewis, dated 26 February 1990 ("Lewis Cert."); Affidavit of Alan E. Kraus, dated 27 February 1990 ("Second Kraus Aff."); Affidavit of Alan E. Kraus, dated 14 March 1990 ("Third Kraus Aff.").

**5.** MCI submitted the following additional papers: Supplemental Brief of MCI in Support of Motion to Dismiss or Transfer to the District of

Columbia, dated 2 April 1990 ("MCI Supp. Brief"); Certification of John A. Fraser, dated 2 April 1990 ("Fraser Cert."); Declaration of Kevin W. Sharer, filed 5 April 1990 ("Sharer Dec."); Certification of Herbert Abelson, filed 5 April 1990 ("Abelson Cert.") and Supplemental Certification of Robert M. Axelrod, dated 2 April 1990 ("Axelrod Supp.Cert.").

**6.** AT & T submitted one supplemental brief and one affidavit: AT & T's Supplemental Memorandum in Opposition to MCI's Motion to Dismiss or Transfer to the District of Columbia, dated 9 April 1990 ("AT & T Supp.Brief"); Affidavit of Michael R. Cole, dated 9 April 1990 ("Cole Aff.").

**7.** On 12 April 1990, AT & T submitted a letter brief of the same date ("12 April 1990 Letter–Brief") and a Certification of Jacob Jacoby, Ph.D., dated 23 March 1990 ("Jacoby Cert."). MCI opposed the submissions of AT & T in a letter, dated 18 April 1990 ("18 April 1990 Letter"), the Certification of Philip R. White, dated 17 April 1990 ("Second White Cert.") and the Declaration of Jan Easom, dated 17 April 1990 ("Second Easom Dec."). AT & T responded to MCI's submissions in a letter, dated 20 April 1990 ("20 April 1990 Letter").

in New Jersey, the record does not reveal that MCI maintains any presence in this state.

Pioneer was incorporated and has its principal place of business in Iowa. It is a technology firm which provides various sales services, including telemarketing,[8] to clients. Since 1985, Pioneer or its predecessors have provided telemarketing services to MCI, which is currently Pioneer's largest client. Decisions regarding telemarketing strategy, such as whom should be called and what the sales pitch should be, are determined by MCI, not Pioneer. Pioneer reports verified sales to MCI, but does not actually switch customers to MCI. Winkel Dec. at ¶¶ 2–5.

Pioneer does not have offices or personnel in New Jersey and it is not licensed to do business in this state. During 1989, Pioneer made over seventy five million telephone calls for MCI, two percent of which—or approximately one and one-half million calls—were made to New Jersey residents. Pioneer has no relationship with New Jersey beyond the telemarketing calls made to New Jersey residents at the direction of MCI.

### B. *Pending Litigation*

AT & T and MCI are commonly recognized suppliers of long distance and other telephone services to residential and business customers. Although AT & T is the dominant presence in the market, competition for customers between these two companies is intense. That competition unfortunately appears to have spilled into the courts. This lawsuit is one of three proceedings filed in recent months which arises from the marketing practices and promotional activities of AT & T and MCI.

The first lawsuit in the series was commenced by MCI in the United States District Court for the District of Columbia in October 1989 (the "District of Columbia Action"). At issue in the District of Columbia Action is MCI's claim that AT & T has engaged in a course of deceptive advertising through various promotional activities aimed at persuading MCI customers to switch to AT & T. AT & T filed a counterclaim in the District of Columbia Action asserting similar claims against MCI and putting its promotional activities in issue.

In January 1990, AT & T commenced the instant action against MCI (the "New Jersey Action"). AT & T pursues two claims in the New Jersey Action alleging that: (1) the telemarketing program of MCI, as implemented by Pioneer, employs false and deceptive representations to persuade AT & T customers to switch to MCI and (2) MCI illegally switches long distance customers of AT & T without their consent.

On the same date, AT & T filed a petition with the FCC to change the regulations by which a long distance carrier is authorized to switch customers (the "FCC Action"). In the FCC Action, AT & T has proposed regulations which would reverse the current practice of permitting customers to be switched on verbal consent and adopt a rule that would require written consent.

#### 1. *The New Jersey Action*

As previously mentioned, the issue in the New Jersey Action involves the telemarketing practices of MCI and its agent[9] Pioneer. The Complaint alleges two forms of allegedly wrongful conduct on the part of the defendants. First, AT & T claims MCI directs Pioneer telemarketing representatives to make false or deceptive statements to AT & T customers. These misrepresentations allegedly involve statements that the customer will be or has been switched to MCI for one of the following reasons: AT & T is going out of business, is no longer providing long distance services, does not provide services to the area, has

---

8. Telemarketing involves the placing of telephone calls directly to prospective customers, making sales presentations to the customers and placing follow-up calls to verify sales. Pioneer Dismissal Brief at 2. MCI itself did not engage in telemarketing but hired Pioneer, a company which provides telemarketing services to clients, to do so.

9. The Complaint characterizes Pioneer as an agent of MCI. This characterization has not been opposed by MCI or Pioneer in connection with these motions. However, I express no opinion on whether an agency relationship actually existed.

merged with MCI or has authorized the switch. AT & T Transfer Opp. at 9–10. Second, AT & T alleges the defendants have directed local exchange companies to switch customers without their consent. This practice is known as "slamming" in industry parlance.

AT & T seeks preliminary and permanent injunctive relief on its misrepresentation claims in the New Jersey Action.[10] It also seeks an injunction preventing MCI from using telemarketing to switch AT & T customers "without the knowledge, agreement and express authorization of the customer." Complaint at 11. AT & T seeks compensatory damages for injury caused by MCI's allegedly wrongful actions and seeks to have MCI disgorge its profits resulting from such conduct together with pre- and post-judgment interest, costs and attorneys fees. AT & T seeks punitive damages and requests treble damages under the Lanham Act as a result of the alleged misrepresentations. AT & T is not seeking redress in the New Jersey Action for any false and deceptive representations that MCI may have made concerning comparisons in prices of AT & T and MCI products. Cole Aff. at ¶ 4.

As to AT & T's decision to bring the New Jersey Action in this district, Merrill Tutton, a vice president of AT & T, submitted a certification stating that the District of New Jersey is the most convenient forum in which to litigate AT & T's telemarketing claims. Tutton Cert. at ¶ 12. Tutton states virtually all of the AT & T employees who are likely to testify in this case are located in Basking Ridge, New Jersey, including Tutton and five other individuals. *Id.* at ¶¶ 13–15. Tutton further indicates nearly all of the relevant documents, including customer data and records of customer inquiries, are located in New Jersey. *Id.* at ¶¶ 17–21. Finally, the Tutton Certification states "all of the documents being produced by MCI in the [District of Columbia Action] are being produced [in Basking Ridge]. Virtually all of the documents being produced by AT & T in that action are

being produced [in Basking Ridge]." *Id.* at ¶ 17 n. 3.

MCI has submitted an affidavit which states four of its witnesses are located in the District of Columbia and none of its witnesses are located in New Jersey. Fraser Cert. at ¶ 7. This affidavit also indicates that discovery in the District of Columbia Action involves documents and witnesses scattered around the nation.

### 2. *The District of Columbia Action*

In the District of Columbia Action, MCI alleges AT & T began investing large amounts of capital in January 1989 in an advertising campaign which falsely portrayed MCI as a dishonest competitor and made misleading comparisons between the services offered by MCI and those of AT & T. The complaint in the District of Columbia Action cites several examples of allegedly false and deceptive AT & T claims published through broadcast, print or direct mail media. Axelrod Cert., Ex. A. These examples include AT & T advertisements which contain allegedly misleading information relating the price and quality of the services offered by MCI.

MCI alleges AT & T made false statements to the effect that its competitors charge for calls never connected, take longer to connect special services, do not serve regions served by AT & T and have a greater error rate and higher charges for transmission of facsimile services. These statements were made primarily in general adverting media such as television, radio, newspapers and magazines.

MCI seeks preliminary and permanent injunctive relief in the District of Columbia Action as to the allegedly false and deceptive statements of AT & T. MCI and AT & T have submitted documentation in support of and in opposition to a preliminary injunction application and are presently awaiting a hearing and discussion on that motion. In addition, MCI seeks a court order directing AT & T to engage in a one year campaign of corrective advertising to "mitigate the lingering effects of the misrepresentations described herein." *Id.* MCI seeks to

---

**10.** AT & T has served on MCI a motion for a preliminary injunction in the New Jersey Action. MCI has not opposed that motion at this time.

have AT & T disgorge its profits resulting from its allegedly wrongful conduct and seeks compensatory and punitive damages, pre- and post-judgment interest, costs and attorneys fees.

AT & T filed an answer which asserts the defense of unclean hands and a counterclaim which alleges MCI has made false and deceptive claims about the prices of its services and the quality and nature of features offered by AT & T. AT & T's counterclaim, like MCI's complaint, challenges advertising through broadcast, print and direct mail media. AT & T did not directly raise the telemarketing activities of MCI in the District of Columbia Action. AT & T did not raise the issue of slamming in the counterclaim. In addition, Pioneer is not a party in the District of Columbia Action.

In the counterclaim, AT & T requests the issuance of preliminary and permanent injunctions and a court-approved corrective advertising campaign which is the mirror image of that sought by MCI. In addition, AT & T seeks to have MCI disgorge its profits and to pay treble damages for injury to AT & T, as well as interest, costs and attorneys fees.

Discovery in the District of Columbia Action has been underway for several months. MCI and AT & T have served interrogatories, document requests and requests for admissions on each other and numerous subpoenas *duces tecum* on marketing, advertising and public relations agencies. Second Kraus Aff. at ¶¶ 5–6. As of the date the instant motions were filed in the New Jersey Action, AT & T had produced close to 160,000 pages of material and its counsel had estimated 540,000 additional pages would be produced in answer to MCI's discovery requests in the District of Columbia Action. Behr Cert. at ¶ 2. Discovery in the New Jersey Action is also underway, but an order has been entered preventing duplication of discovery with the District of Columbia Action.[11]

### 3. *Relationship of the Cases*

The New Jersey Action and the District of Columbia Action arise out of the competition for long distance customers between AT & T and MCI. The District of Columbia Action involves allegedly false and deceptive claims made through broadcast, published or direct mail media. The New Jersey Action involves allegedly false and deceptive claims made in telemarketing efforts. In both cases, however, the ultimate injury, whether claimed by AT & T or MCI, is the wrongful appropriation of long distance customers by allegedly deceptive promotional activities.

MCI claims the New Jersey Action is merely a "subset" of the District of Columbia Action and should be litigated in that forum or by the same judge. MCI Transfer Brief at 2, 15–18. The "subset" argument is supported by the affidavit of Kevin W. Sharer, Executive Vice President of Sales and Marketing of MCI. Sharer Dec. at ¶ 1. According to Sharer's affidavit, MCI employs a variety of marketing ventures to reach potential customers, including broadcast, print, direct mail and telemarketing programs. *Id.* at ¶ 4. These activities are targeted to different audiences, but there is unavoidable overlap among customers. Additionally, the various marketing strategies are coordinated and interrelated. Sharer states MCI's competitors, such as AT & T, employ similar marketing strategies. *Id.* at ¶ 5.

AT & T opposes MCI's "subset" argument by stating that the misrepresentations at issue in the New Jersey Action are not the same as those asserted in the District of Columbia Action. AT & T attempts

---

**11.** Apparently, the order has been effective in minimizing the amount of overlap in discovery. Out of the hundreds of thousands of pages discovered in the District of Columbia Action, MCI points to a few which purportedly relate to the New Jersey Action. MCI Transfer Brief at 13–14; Behr Cert., Ex. A & B; Axelrod Reply Cert. at ¶ 2.

As AT & T argues, the fact that these documents may make reference to telemarketing does not mean it is in issue in the District of Columbia Action. AT & T Transfer Opp. at 18 n. 13; Lewis Cert. at ¶¶ 4–5.. However, AT & T's argument does not support the position that the District of Columbia Action is unrelated to the New Jersey Action or, for that matter, that misrepresentations made via MCI's telemarketing program will not be relevant to the advertising schemes at issue in that action.

to minimize the relatedness of the two actions by demonstrating that the customers affected by telemarketing are more limited group than the customers affected by the broad promotional programs at issue in the District of Columbia Action. In addition, AT & T argues the New Jersey Action should be retained in the District of New Jersey because this is AT & T's choice of forum.

AT & T does not, however, take issue with MCI's assertion that telemarketing is merely one form of promotional activity which is related to the activities at issue in the District of Columbia Action. Rather, AT & T argues the two cases are separate and distinct causes of action: the New Jersey Action, which concerns specific customers who were subjected to personal telemarketing of Pioneer and MCI, and the District of Columbia Action, which concerns the population in general, who were subjected to mass media advertising. AT & T further argues there is no relationship between the type of misrepresentation in the two cases because customers affected by the conduct in the New Jersey Action were told they had no choice but to switch to MCI, whereas victims of misrepresentation of the type at issue in the District of Columbia Action retained the freedom of choice whether to switch.

AT & T does not contest that the ultimate injury in these cases is the loss of customers due to the allegedly wrongful acts of a competitor. Additionally, AT & T has not submitted an affidavit in opposition to the affidavit of Dr. Herbert Abelson, a marketing consultant who states "customers are subject to the entire mix of promotional activity in the relevant marketplace" and who states this confusion of issues must be considered in order to evaluate the issues in this case. Abelson Cert. at ¶¶ 3–4. In fact, AT & T has conceded there may be an issue of duplicative recovery between the New Jersey Action and the District of Columbia Action. AT & T Supp. Brief at 8 n. 2.

## II. DISCUSSION

Four motions are at issue: Pioneer's motion to dismiss the New Jersey Action for lack of personal jurisdiction, MCI's motion to transfer this action to the District of Columbia, MCI's motion to dismiss AT & T's state law claims and MCI's motion to refer AT & T's slamming claims to the FCC. This opinion addresses the Pioneer motion to dismiss and the MCI motion to transfer. The remaining motions are not considered and may be presented to the transferee court.

### A. Jurisdiction Over Pioneer

Pioneer, a resident of Iowa, asserts AT & T's claims against it must be dismissed for lack of *in personam* jurisdiction. Pioneer maintains no physical presence in this state, has no ongoing relationship with any New Jersey resident and is not licensed to do business in this state. AT & T therefore concedes the only basis for the exercise personal jurisdiction over Pioneer is the telephone contact of Pioneer representatives to New Jersey residents during the course of implementing MCI's telemarketing program.

A federal court has jurisdiction over a non-resident defendant to the extent authorized by the law of the state in which that court sits. Fed.R.Civ.P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 691 (3d Cir.1990); *Provident Nat'l Bank v. Cal.Fed. Savings & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987). Federal courts sitting in New Jersey apply New Jersey law when interpreting the meaning of due process for the purpose of *in personam* jurisdiction. *Eason v. Linden Avionics, Inc.*, 706 F.Supp. 311, 319 (D.N.J.1989); *Western Union Telegraph v. T.S.I.*, 545 F.Supp. 329, 332 (D.N.J.1982).

The New Jersey long arm rule permits out-of-state service as far as is constitutionally permissible under the fourteenth amendment. N.J. Court Rule 4:4–4; *De-James v. Magnificence Carriers*, 654 F.2d 280, 284 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469, 508 A.2d 1127 (1986). Under the fourteenth amendment,

personal jurisdiction exists where the plaintiff demonstrates the defendant has sufficient "minimum contacts" with the forum state:

> The first step in a minimum contacts analysis ... is to determine whether the defendant has sufficient contacts with the forum state. The second step is to evaluate those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.

*Charles Gendler & Co.*, 102 N.J. at 472, 508 A.2d 1127 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)). The courts of New Jersey have exercised *in personam* jurisdiction "wherever possible with a liberal and indulgent view if the facts reasonably support the presence of the flexible concepts of 'fair play and substantial justice.'" *Ketcham v. Charles R. Lister Int'l, Inc.*, 167 N.J.Super. 5, 7, 400 A.2d 487 (App.Div.1979).

AT & T bears the burden of demonstrating that Pioneer's contacts with this state are sufficient to give the court *in personam* jurisdiction. *North Penn Gas Co.*, at 691; *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir.1983). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *North Penn Gas Co.*, at 692 (quoting *Stranahan Gear Co. v. N L Indust.*, 800 F.2d 53, 58 (3d Cir.1986). In this case, AT & T relies on Pioneer's own admission that it annually made approximately one and one-half million telephone calls into New Jersey on behalf of MCI.

■ AT & T must demonstrate that either the particular cause of action arose from Pioneer's activities within New Jersey (specific jurisdiction) or Pioneer has continuous and systematic contacts with New Jersey (general jurisdiction). *Provident Nat'l Bank*, 819 F.2d at 437 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 1871, 1873, 80 L.Ed.2d 404 (1984)). Although AT & T has argued Pioneer's contacts with New Jersey establish both general jurisdiction and specific jurisdiction, the alleged misrepresentations which are at issue were made in the course of Pioneer's telemarketing efforts. "When the cause of action arises out of the defendant's contacts with the forum state, it is more likely that the contacts will subject the defendant to the jurisdiction of the forum than if the cause arises from unrelated contacts." *Charles Gendler & Co.*, 102 N.J. at 471, 508 A.2d 1127. As AT & T's claims originate from Pioneer's contacts with this jurisdiction, the focus of this discussion is on the existence of specific jurisdiction over Pioneer, although the principles of general jurisdiction and requisite minimum contacts are mentioned as well.

■ For purposes of establishing either general or specific jurisdiction, minimum contacts with a state are shaped by purposeful conduct making it reasonable for the defendant to anticipate being haled into court there. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980); *North Penn Gas Co.*, at 692; *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 323, 558 A.2d 1252 (1989). These contacts must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). *Accord Lebel*, 115 N.J. at 323–24, 558 A.2d 1252. The absence of a "physical presence" in the state is not determinative as long as the facts indicate "purposeful availment" by the defendant of the laws of the state. *North Penn Gas Co.*, at 694.

In measuring the sufficiency of minimum contacts for *in personam* jurisdiction, a court must focus upon the "relationship among the defendant, the forum and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). The "purposeful availment" requirement "en-

sures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another person.'" *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted). *Accord Lebel*, 115 N.J. at 323, 558 A.2d 1252:

> The contacts between the defendant and the forum must also be judged "in light of the claim," to determine whether it is "fair" to compel the defendant to defend in the forum state. *Keeton*, 465 U.S. at 775, 104 S.Ct. at 1478. By exercising the privilege of conducting activities within the forum state, a defendant is put on "clear notice" that it is subject to suit there. *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. The fairness of exercising jurisdiction over a defendant results from a reciprocal relationship between the defendant and the forum state. *Eason*, 706 F.Supp. at 320. When the claim is related to the defendant's activities in the forum state, "[r]ather than focus on the contacts between the defendant and the forum state, . . . the court must inquire whether the relationship of the transaction at issue to the forum justifies the forum state's assertion of jurisdiction over the defendant." *Electro-Catheter Corp. v. Surgical Specialties Instrument Corp.*, 587 F.Supp. 1446, 1449 (D.N.J.1984)

■ Pioneer's telephone contact with New Jersey residents is relevant to the minimum contacts analysis. *See Lebel*, 115 N.J. at 325, 558 A.2d 1252 ("when a merchant uses the instrumentalities of commerce to tap an interstate market for its product, such wire and mail communications are relevant contacts to be considered"). However, Pioneer argues its contacts with New Jersey were relatively minor compared with the claims asserted by AT & T.

Out of the more than seventy five million telemarketing calls made by Pioneer on behalf of MCI in 1989, only two percent were to New Jersey. Pioneer states:

> AT & T's counsel gave [Pioneer] a "sample" of 14 individuals who allegedly were "victims of unauthorized switching ('slams') and misrepresentations by MCI (or by [Pioneer] on MCI's behalf)." Of those, only *four* were "sold" by [Pioneer].

Pioneer Dismissal Brief at 6 (emphasis in original). Moreover, Pioneer claims the telephone calls were "fortuitous" because it was MCI, not Pioneer, which determined what numbers would be called. *Id.* at 5-6.

By comparing Pioneer's contacts with this state to the total number of telephone calls made on behalf of MCI, Pioneer turns the analysis away from the relevant issue. That issue is whether Pioneer purposefully availed itself of the privilege of doing business in this state. The simple fact of the matter is that Pioneer made approximately one and one-half million telephone calls to this state in an effort to solicit business for MCI. These contacts were made in the course of implementing a nationwide telemarketing campaign for MCI.

That only two percent of the seventy five million calls made by Pioneer were made to New Jersey residents does not detract from the nature and quality of those contacts. The telemarketing efforts of Pioneer reached approximately one and one-half million New Jersey residences. The record indicates these calls involved a prolonged sales presentation in an effort to persuade New Jersey residents to adopt MCI as their long distance carrier. This lawsuit arises directly from those telecommunications. Although Pioneer may be subject to suit for misrepresentation in every state in which it conducted substantial telemarketing activities, "[i]t is realistically possible that a defendant corporation may have the required minimum jurisdictional contacts with all fifty states resulting from its business activities." *Eason*, 706 F.Supp. at 320.

To suggest that Pioneer's contacts with this state do not confer specific jurisdiction over Pioneer for purposes of the New Jersey action is to say Pioneer's has no contacts with any state which did not receive more than an equal share of the calls that Pioneer made for MCI. Accepting this argument would effectively immunize Pioneer from liability for misrepresentations

arising out of its telecommunications in any state other than its home forum. The dangers of this argument were noted in *Electro–Catheter Corp.:*

> While, in isolation, telephone and mail communications may not establish a substantial connection between a nonresident and a forum, when these communications form an integral part of an ongoing business relationship, such contacts are relevant in assessing the nature and extent of defendant's conduct within a forum. *Otherwise, those businesses that can conduct extensive commercial activity in other jurisdictions primarily by telephone or through the mails would tend to be immunized from suit by those with whom they do business in any but their home jurisdictions.*

587 F.Supp. at 1455 (emphasis added).

In this case, there is no question Pioneer conducted extensive commercial activity exclusively by telephone. While Pioneer was soliciting business at MCI's direction and for MCI's benefit, the contacts with this state were and are intimately related to the subject matter of the New Jersey Action. To the extent those contacts benefitted MCI they indirectly inured to the benefit of Pioneer.

The telemarketing activities of MCI and Pioneer are analogous to a direct mail campaign in which promotional brochures are sent to addresses throughout the nation. Such a scheme was held to confer specific jurisdiction over the defendant in *United States Golf Ass'n v. U.S. Amateur Golf Ass'n,* 690 F.Supp. 317 (D.N.J.1988). In

that case, a California partnership mailed approximately 1,400 promotional packages to various locations throughout the United States. Of those 1,400 packages, only twenty-two were mailed to New Jersey. None of the twenty-two packages resulted in business for the partnership and no partnership employee ever entered this state. Nevertheless, the court held the deliberate direct mail solicitation of New Jersey residents was sufficient to confer specific jurisdiction over the California partnership.[12] *Id.* at 320.

Similarly, in *Kugler v. Market Dev. Corp.,* 124 N.J.Super. 314, 306 A.2d 489 (Ch.Div.1973), the state court denied a motion to dismiss for lack of *in personam* jurisdiction because the defendant, a foreign corporation, had engaged in a direct mailing campaign to New Jersey residents. The court stated: "Direct mail solicitation of New Jersey residents is a sufficient warrant to sanction *in personam* jurisdiction without offending traditional notions of fair play and substantial justice." *Id.* at 318–19, 306 A.2d 489 (citing *Schaffer v. Granit Hotel, Inc.,* 110 N.J.Super. 1, 264 A.2d 240 (App.Div.1970)). In that case, as in the instant case, the claim involved misrepresentations made in the promotional activity of the defendant.

The placement of over approximately one and one-half million telephone calls by Pioneer to New Jersey residents constitutes sufficient minimum contacts and purposeful availment by Pioneer upon which to base jurisdiction in this district for purposes of the New Jersey Action.[13]

---

**12.** The court held that, although jurisdiction over the defendant existed in the District of New Jersey, venue was not appropriate here. Accordingly, the court transferred the case to the district where the defendant's mail campaign originated. *United States Golf Ass'n,* 690 F.Supp. at 321–22.

**13.** A finding that personal jurisdiction exists over Pioneer is not necessary to decide the transfer motion of MCI. Even in cases where "the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where [the action] clearly could have been brought." *Societe Nouvelle Generale v. Kool Stop Intern.,* 633 F.Supp. 153, 155 (E.D. Pa.1985) (citing *Schwilm v. Holbrook,* 661 F.2d

12 (3d Cir.1981)). The Third Circuit has held a transferor court need not have personal jurisdiction over a defendant in order to transfer an action under section 1404(a). *United States v. Berkowitz,* 328 F.2d 358 (3d Cir.), *cert. denied,* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964) (extending the rule of *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), that a district court need not have jurisdiction over the defendant in order to transfer a case laying venue in the wrong district under 28 U.S.C. § 1406(a)). Pioneer has represented that it would not object to personal jurisdiction in the District of Columbia. Thus, even if the telemarketing activities of Pioneer do not establish specific jurisdiction in this state, transfer to the alternative forum is permissible.

## B. *Transfer*

For the convenience of the parties and witnesses, and in the interests of justice, a federal district court may transfer a civil action to another district. 28 U.S.C. § 1404(a).[14] The purpose of section 1404(a) "is to prevent waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–75, 4 L.Ed.2d 1540 (1960)).

■ The terms of the statute suggest three factors must be considered in transferring a case: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. *Sandvik, Inc. v. Continental Ins. Co.*, 724 F.Supp. 303, 306 (D.N.J.1989). In addition, the transferee forum must be one where the suit "might have been brought." 28 U.S.C. § 1404(a); *see Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Sandvik*, 724 F.Supp. at 306.

■ The moving party has the burden of persuasion on its *forum non conveniens* motion. *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir.1989); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir.1988); *Myers v. American Dental Ass'n*, 695 F.2d 716 (3d Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir.1973). The burden is not on the plaintiff to show that the proposed alternate forum is inade-

quate. On the contrary, the burden is on the moving party to show the proposed alternate forum is not only adequate but also more convenient than the present forum. *Lacey*, 862 F.2d at 43–44.

As mentioned, MCI seeks to transfer the New Jersey Action to the District of Columbia. Pioneer has conceded personal jurisdiction in that forum. Pioneer Dismissal Brief at 5 n. 2; Easom Dec. at ¶¶ 2–4. Additionally, MCI is subject to personal jurisdiction in that forum because it maintains its principal place of business there. AT & T did not object to the exercise of personal jurisdiction in the District of Columbia Action and did not file a motion to transfer or dismiss on *forum non conveniens* grounds. Accordingly, no "real question" exists as to the appropriateness of venue in the District of Columbia. *Shutte*, 431 F.2d at 24.

The analysis under section 1404 is flexible and must be made on the unique facts of each case. *Sewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30, 108 S.Ct. 2239, 2248, 101 L.Ed.2d 22 (1988); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981); *Van Dusen*, 376 U.S. at 623, 84 S.Ct. at 812–13. In *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court enunciated various factors which should be considered in deciding a *forum non conveniens* motion.[15] These factors fall into two broad categories. One category includes factors relating to the so-called "private interests" of the parties in the context of the litigation: the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwill-

---

**14.** The transfer statute states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a).

**15.** Although *Gulf Oil* involved a motion to dismiss under the common law doctrine of *forum non conveniens*, courts routinely look to the *Gulf Oil* factors for guidance in section 1404(a) transfer cases. *See Sandvik, Inc.*, 724 F.Supp. at 302 n. 8. Similarly, the Third Circuit's decisions

in *Lony* and *Lacey*, which involved motions to dismiss under the doctrine of *forum non conveniens*, are relevant to a motion to transfer under section 1404. Federal courts have broader discretion to transfer an action under section 1404(a) than to dismiss under the common law doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955); *All State Freight v. Modarelli*, 196 F.2d 1010, 1011 (3d Cir.1952); *Sandvik*, 724 F.Supp. at 307; *Rutherford v. Sherburne Corp.*, 616 F.Supp. 1456, 1463 (D.N.J.1985).

ing witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the subject of the suit. The other category consists of the "public interest" in the administration of courts and adjudication of cases: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law. *Sandvik,* 724 F.Supp. at 307.

### 1. *Private Interests*

In a recent decision involving transfer under section 1404(a), it was noted that:

Under the *Gulf Oil* analysis, a plaintiff's choice of forum is presumptively correct. .... In the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. .... When a plaintiff chooses his home forum, the choice is "entitled to greater deference."

*Sandvik, Inc.,* 724 F.Supp. at 307 (citations omitted). Indeed, a plaintiff's choice of forum "should not lightly be disturbed." *Shutte,* 431 F.2d at 25.

AT & T argues its choice of forum deserves the heightened deference given to a plaintiff suing on its "home turf." *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1436 (D.Del.1989); *Kirschner Bros. Oil, Inc. v. Pannill,* 697 F.Supp. 804, 806 (D.Del.1988). However, while AT & T maintains a considerable presence in New Jersey, it is a New York corporation with its principal place of business in that state. Therefore, AT & T cannot be said to be entitled to the greatly enhanced deference due to a plaintiff suing in its home state.

This case, moreover, involves facts and injuries which occurred in but are not centered in New Jersey. Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference. *National Mortgage Network v. Home Equity Centers,* 683 F.Supp. 116, 119 (E.D.Pa.1988); *Bolton v. Tesoro Petroleum Corp.,* 549 F.Supp. 1312, 1314 (E.D.Pa.1982); *Schmidt*

*v. Leader Dogs for the Blind, Inc.,* 544 F.Supp. 42, 47 (E.D.Pa.1982).

The deference due to AT & T's choice of forum is also limited by the fact that maintaining the New Jersey Action in New Jersey may well "result in duplicative litigation." *E.I. Du Pont de Nemours Co. v. Diamond Shamrock Corp.,* 522 F.Supp. 588, 591 (D.Del.1981). In any event, AT & T's choice of forum is neither dispositive of the transfer analysis nor is it the only factor to be considered. *Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.,* 703 F.Supp. 350, 353 (D.N.J.1989). "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. DuPont de Nemours,* 522 F.Supp. at 592. While AT & T's choice of forum is not afforded the degree of deference due to a place of residence, it is not disregarded. It will be given the ordinary degree of deference due to a plaintiff's choice of forum.

Under the *Gulf Oil* test, the defendant must show the balance of conveniences weighs "strongly in favor" of transfer to a more convenient forum. *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843; *Shutte,* 431 F.2d at 25; *Reading Metal Craft Co. v. Hopf Drive Assoc.,* 694 F.Supp. 98, 102 (E.D.Pa. 1988); *Hardaway Constr. v. Conesco Indus. Ltd.,* 583 F.Supp. 617, 620 (D.N.J. 1983). The balance of relevant factors must "weigh heavily on the side of [transfer]." *Lacey,* 862 F.2d at 44.

A district court must rely on facts which are a matter of record in deciding a motion for transfer. *Id.* at 44; *Plum Tree, Inc.,* 488 F.2d at 756–57. In making its decision, a "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that transfer to another venue is appropriate. *Lacey,* 862 F.2d at 39. Among the considerations are whether the moving party submitted adequate data of record to facilitate the appropriate analysis, whether the moving party has met its burden of persuasion, whether the contentions of the plaintiff were adequately considered and whether the relevant pri-

vate and public interests were both adequately considered and balanced. *Id.*

■ In this case, the moving party, MCI, has not met its burden with respect to showing that transfer would be more convenient for the witnesses and parties. MCI has submitted one affidavit which makes reference to the convenience of the parties or witnesses in connection with this transfer motion. The last paragraph of that affidavit states that four witnesses with knowledge of the facts of the New Jersey Action are located in Washington, D.C. Fraser Cert. at ¶ 7.[16]

AT & T has submitted an affidavit establishing that virtually all of the documentary evidence and employees who are likely to testify are located in New Jersey. Tutton Cert. at ¶¶ 13–14, 17. On the factual record before the court, the evidence regarding the convenience of the parties or witnesses does not weigh heavily in favor of transfer to the District of Columbia.

At best, the balance of conveniences is near equipoise. This dispute involves two large corporations litigating a national promotional campaign which does not appear to be centered in any particular forum. AT & T claims the New Jersey Action is most conveniently maintained in this district and there is no reason to doubt this assertion. However, AT & T did not previously object to venue in the District of Columbia Action and that forum is home to a related litigation between AT & T and MCI. This is not a case in which the alternative forum is so distant or unfamiliar that transfer will have an unfair impact on the plaintiff.

The Third Circuit recently noted in a case involving a motion to dismiss for *forum non conveniens:* "If the balance of private interest factors is close to equipoise, ... that would not favor dismissal." *Lony,* 886 F.2d at 635. In fact, such a finding "weigh[s] in favor of retaining jurisdiction." *Id.* In this case, the private interests, i.e., the equal balance of conveniences

and the deference afforded AT & T's choice of forum, weigh against transfer to the District of Columbia.

### 2. *Public Interests*

■ Although the private interests weigh against transfer of this matter, MCI argues the "interests of justice" warrant transfer as a matter of public policy because the New Jersey Action is merely a "subset" of the District of Columbia Action and the claims of AT & T in the New Jersey Action are compulsory counterclaims in the District of Columbia Action. While this forum is more convenient for AT & T, MCI argues AT & T's interest in litigating the New Jersey Action here should be subjugated to the public interest in having this litigation proceed in the same forum as the related District of Columbia Action.

The District of Columbia Action and the New Jersey Action are related in many ways. Both actions involve Lanham Act and common law claims arising out of allegedly deceptive promotional statements of the parties. Both actions involve demands for damages as a result of the alleged injury and injunctive relief to prevent future injury. Finally, the ultimate injury suffered by the parties in both actions is the same—loss of long distance customers due to the allegedly wrongful conduct at issue.

District courts frequently transfer cases when the record indicates a related action is pending in an appropriate alternative forum. *See, e.g., Todd Shipyards Corp. v. Cunard Line Ltd.,* 708 F.Supp. 1440, 1447 (D.N.J.1989); *Security Sav. Bank, SLA v. Green Tree Acceptance,* 703 F.Supp. 350, 354 (D.N.J.1989); *Ballard Medical Prod. v. Concord Laboratories,* 700 F.Supp. 796, 801 (D.Del.1988); *Reading Metal Craft Co. v. Hopf Drive Assoc.,* 694 F.Supp. 98, 107 (E.D.Pa.1988); *American Home Products Corp. v. Johnson & Johnson,* 668 F.Supp. 446, 449 (E.D.Pa.1987); *Chrysler Capital*

---

**16.** Initially, MCI did not submit any documentary support for its assertion that transfer would enhance the convenience to the parties or witnesses. At oral argument on this motion, concern was expressed regarding the absence of any evidentiary support on the part of MCI. The Fraser affidavit was submitted by MCI as a supplement to the submissions before the court at the time of oral argument on 26 March 1990.

*Corp. v. Woehling,* 663 F.Supp. 478, 483 (D.Del.1987).

Courts transferring such cases rely the Supreme Court's admonition that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960). *See, e.g., Ballard Medical Prod.,* 700 F.Supp. at 801; *American Home Products Corp.,* 668 F.Supp. at 449; *Chrysler Capital Corp.,* 663 F.Supp. at 483).

Where transfer of related cases is contemplated, "the prior pending action has priority in venue." *Todd Shipyards,* 708 F.Supp. at 1447. The District of Columbia Action was filed prior to this action. AT & T did not object to venue in that forum under section 1404. Therefore, if the related cases are to be litigated in one forum, the New Jersey Action, as the later filed action, must be transferred to the District of Columbia.[17]

MCI claims this case entails circumstances analogous to those against which the Supreme Court cautioned in the *Continental Grain* case. MCI asserts the issues in the New Jersey Action and the District of Columbia Action are similar and argues both suits will require much of the same discovery and in-court testimony. According to the affidavits submitted by MCI, the advertising issues in the District of Columbia Action will be relevant to the New

Jersey Action to determine the extent to which general media advertising influenced the decision of customers subjected to telemarketing to switch from AT & T to MCI. MCI also claims the maintenance of separate actions presents the threat of inconsistent results.[18]

AT & T, on the other hand, urges the court to focus on distinguishing factors such as the substance of the alleged misrepresentations and the medium or media through which they were made. AT & T points to differences between the claims in the New Jersey and District of Columbia Actions by emphasizing that the "slamming" claims are not at issue in that case. AT & T also notes Pioneer is not a party to the District of Columbia Action. Finally, AT & T urges the court to consider that the injury suffered by AT & T customers is different in each case, namely, that the victims of mass media misrepresentations are merely hampered in their free choice of long distance carrier, while victims of telemarketing misrepresentations and "slamming" are deprived of their freedom of choice.

Before embarking on an analysis of these issues, it is important to note that, unlike this case, in many of the cases cited above the moving party established transfer would be more convenient for the parties and witnesses. *See Ballard Medical Prod.,* 700 F.Supp. at 801 (in patent infringement case, all witnesses and documents relevant to development and design of defendant's product were located in transferee district); *American Home*

---

17. I have repeatedly stated on the record I am amenable to presiding over a consolidation or separate trials of the District of Columbia and New Jersey Actions in this district. However, MCI rejected this invitation and AT & T has not filed a motion to transfer in the District of Columbia Action. Therefore, the opportunity is not present for me to consolidate or separately try the cases. The posture of this case is such that if the New Jersey Action is to be litigated in the same forum as the District of Columbia Action, then this action must be transferred to the District of Columbia.

18. The same arguments are made with respect to MCI's assertion that AT & T's complaint in this case is a compulsory counterclaim to MCI's

complaint in the District of Columbia Action. A compulsory counterclaim is one which arises from the "same transaction or occurrance" as the underlying cause of action and is "logically related" thereto. Fed.R.Civ.P. 13(a); *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978). In addition, a counterclaim is compulsory where "separate trials on each of the respective claims would involve substantial duplication of effort and time by the parties and the courts." *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 643 (3d Cir.1961). It is unnecessary, however, to reach the compulsory counterclaim issue in this case because the New Jersey Action is transferred to the District of Columbia on the basis of section 1404(a).

*Products Corp.*, 668 F.Supp. at 448 (all parties did business in and most of defendant's witnesses were located in transferee district); *Chrysler Capital Corp.*, 663 F.Supp. at 482–83 (convenience of parties and witnesses promoted by transfer). In *Continental Grain*, the lower court found that the convenience of the witnesses and parties favored transfer. The Supreme Court stated those findings "were well supported by evidence, were approved by the Court of Appeals, are not challenged here, and we accept them." 364 U.S. at 21, 80 S.Ct. at 1472.[19]

As mentioned previously, the balance of private interest factors relevant to MCI's transfer motion weighs against transfer to the District of Columbia and in favor of retaining jurisdiction over the New Jersey Action. Therefore, this case raises a somewhat novel question: whether the public interests in transferring a case to a forum in which a related case is pending is sufficient to outweigh the private interest balance which does not favor transfer.

*Todd Shipyards* involved a similar situation in that the only factor weighing in favor of transfer was the existence of a related action in an alternative forum. In that case, a ship builder ("Todd") was under contract to perform repairs of a ship owned by a cruise line operator ("Cunard"). A dispute arose out of the contract and Todd, a California corporation, filed an action in the Northern District of California for damages and arrest of the ship.

The contract under which the work was performed provided for arbitration of such disputes in New York City. The California action was stayed pending resolution of arbitration, which was ultimately held in New Jersey. *Todd Shipyards*, 708 F.Supp. at 1442. A dispute arose as to the arbitration and Todd filed a declaratory judgment action in the District of New Jersey. That proceeding was transferred to the Northern District of California. The district judge in that court ordered the parties to continue arbitration, which proceeded with hearings in New Jersey and San Francisco.

Following an arbitration decision in favor of Todd, it filed a motion to confirm in the Northern District of California. Cunard, however, filed a motion to vacate the arbitration award in the District of New Jersey. Todd moved in this district to transfer the matter to the Northern District of California. *Id.* at 1443–44. Todd's motion to transfer was granted.

After determining the Northern District of California was an appropriate forum for transfer, it was found that the "interests of justice" favored transfer of Cunard's action to vacate to the same forum as Todd's motion to confirm. It was held that: "litigation of Cunard's motion to vacate the arbitration award in this court will create an unnecessary risk of a result inconsistent with [the California judge's] earlier rulings, and will result in a definite waste of judicial resources to the extent [he] has already developed a familiarity with this litigation." *Id.* at 1448. It was also noted the venue priority follows the "first filed" rule and therefore the New Jersey Action should be transferred to California. *Id.* at 1447. To this extent, *Todd Shipyards* is persuasive support for MCI's position in the instant case.

As to convenience of the witnesses and parties, the record in *Todd Shipyards* did not establish witnesses would be required for resolution of the motions to vacate or confirm the arbitration award. *Id.* at 1449–50. As counsel for Todd and Cunard resided in California and New Jersey, respectively, it was observed that: "This venue dispute appears to involve merely a dispute concerning the convenience of litigation counsel of Todd and Cunard." *Id.* at

---

**19.** The issue in the *Continental Grain Co.* case was whether the transfer motion could be granted in light of the fact that the action sought to be transferred was an *in rem* action against a ship, while the related action was an *in personam* action against the owner of the ship. *Id.* at 20, 80 S.Ct. at 1471. On this point, the Supreme Court held "the [*in rem*] fiction appears to have no relevance whatever in a District Court's determination of where a case can most conveniently be tried." *Id.* at 23, 80 S.Ct. at 1473. The Court stated "[t]he crucial issues about fault and damages suffered were identical, whether considered as a claim against the ship or its owner." *Id.* at 26, 80 S.Ct. at 1475.

1450. That factor was held to be unimportant in the balance of the private interests. It was held other private interest factors [20] were less important than the public interest in having related disputes litigated in the same forum and Todd's motion to transfer was granted.

In this case, as in *Todd Shipyards,* the related case doctrine compels transfer of the New Jersey Action to the District of Columbia. Although the subject matter of the related cases is not identical as in *Todd Shipyards,* it is similar. To determine the extent to which the New Jersey Action is related to the District of Columbia Action, it is helpful to split the analysis into two components: the liability issue and the damages issue.

The liability issue in the New Jersey Action is distinguishable from the liability issue in the District of Columbia Action. It is conceivable that the statements of MCI could be found to violate the Lanham Act in the New Jersey Action but not in the District of Columbia Action. This result would not be inconsistent because the specific representations at issue in both actions are not identical. The difference on the liability issue is underscored by the facts that Pioneer is not a defendant and slamming is not at issue in the District of Columbia Action.

MCI has submitted evidence, however, showing the liability issue in the New Jersey Action will involve an uncertain amount of overlap with the District of Columbia Action. The Fraser affidavit describes the possible affirmative defenses or additional claims to be asserted by MCI in the pleadings to be filed in the New Jersey Action. MCI may assert the defense of unclean hands in this case, as AT & T has done in the District of Columbia Action. The litigation of this defense will require reference to the alleged misrepresentations of the parties at issue in the District of Columbia Action. In addition, MCI may raise the defenses of estoppel or waiver

with regard to AT & T's failure to raise its telemarketing claims as a counterclaim in the District of Columbia Action.[21]

Moreover, AT & T has admitted the issue of identity between the two actions will reappear in the prosecution of the New Jersey Action. Beside the rather extensive submissions of the parties regarding this issue in the instant transfer motion, AT & T has argued that if MCI raises the defenses it suggests it will raise (i.e., unclean hands, estoppel, waiver), those defenses may be subject to a motion to strike because of a "lack of relatedness." AT & T Supp. Brief at 10.

This argument indicates the relatedness issue will be before this court a second time if MCI brings the defenses it claims it will bring. This will necessitate a detailed examination of all the issues in the District of Columbia Action and a point-by-point comparison with the issues in the New Jersey Action. This exercise will result in wasteful duplication of time and resources which have already been expended in deciding this motion.

AT & T's proposed solutions for these problems would in fact increase the administrative difficulties presented by maintaining related cases in separate fora. AT & T suggests that to prevent MCI from reasserting its claims in the District of Columbia Action as counterclaims in the New Jersey Action, this court should stay the proceedings or the District of Columbia court should issue an order restraining MCI from filing its District of Columbia claims in the New Jersey Action. *Id.* at 11. These solutions are unsatisfactory. The best and most appropriate means to prevent duplication of MCI's claims is to transfer the New Jersey Action to the District of Columbia, where MCI's claims are already pending. *Cf. E.I. DuPont de Nemours,* 522 F.Supp. at 592 (advantage to parties and court of "unified discovery" facilitated by transfer to forum where related case was pending).

**20.** The other factors considered were that Todd had filed for bankruptcy in New Jersey and that further fact-finding might have been necessary in this state.

**21.** AT & T concedes its telemarketing claims would be permissive counterclaims in the District of Columbia Action. AT & T Supp.Brief at 10.

The relatedness of the two actions is also a point of contention with regard to the damages issue. The relationship between the New Jersey Action and the District of Columbia Action is even more apparent from the point of view of awarding relief after liability has been determined. Both parties have requested monetary damages in the form of compensation and disgorgement of profits in the New Jersey Action and the District of Columbia Action.[22] Both parties have also sought equitable relief in the form of negative injunctions and a corrective advertising campaign.

Whether this court, the District of Columbia court or both courts will be required to fashion relief after the liability issues are determined, the findings of the other court will be relevant, if not indispensable. AT & T's has raised the defense of unclean hands in the District of Columbia Action. In fashioning equitable relief, therefore, it may be necessary to determine to whether the telemarketing claims of AT & T have been successful.

AT & T argues an unclean hands defense, if raised, is not likely to succeed because it would be inconsistent to permit one party to continue victimizing innocent consumers through misrepresentation merely because its adversary was guilty of similar conduct. *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F.Supp. 194, 214 (D.D.C.1989). However, this argument ignores the fact that both AT & T and MCI have requested equitable relief in the form of a campaign of corrective advertising. To develop and implement such a plan would require consideration of the extent to which the prevailing party was also guilty of disseminating false or misleading information. *Cf. Alpo Petfoods*, 720 F.Supp. at 214–215.

In the *Alpo Petfoods* case, competing manufacturers of dog food products were both found to have disseminated misleading information regarding the other's product. The court enjoined both parties from future violations of the Lanham Act and required them to engage in separate courses of corrective advertising. *Id.* However, the court decided to award damages only to the plaintiff, ALPO, because the misrepresentations of the defendant, Ralston, were more significant than those of ALPO and were ongoing. *Id.* at 216. The court stated:

> This is not to condone ALPO's conduct. This court has taken into account the fact that ALPO has acknowledged its misconduct and has ceased its offending advertising program, whereas Ralston persists in its [offensive conduct].

*Id.* The wrongdoing of the prevailing party was relevant to the relief awarded by the court.

Likewise, the issue of monetary damages in the New Jersey Action may involve testimony on the extent to which general advertising, telemarketing or both influenced the decision of customers to switch long distance carriers. Coordinated promotional campaigns which include telemarketing and mass marketing are typical in the industry. Sharer Dec. at ¶¶ 4–6. MCI has submitted an affidavit of an expert witness who states the New Jersey Action cannot be litigated without reference to the general advertising schemes of AT & T and MCI, which are at issue in the District of Columbia Action. Abelson Cert. at ¶¶ 34. While this argument appears to be irrelevant to the slamming of AT & T customers, it may be necessary to know the extent, if any, that mass media advertising had on the decision to switch long distance carriers following a telemarketing sales pitch.

After oral argument on 12 April 1990, AT & T was permitted to submit an affidavit in an effort to demonstrate that the New Jersey Action involves proportionately more slamming claims than misrepresentation claims. The affidavit of Jacob Jacoby, Ph.D., indicates he was hired by AT & T in February 1990 to conduct a study to determine the extent to which MCI and Pioneer were engaging in deceptive telemarketing

---

**22.** AT & T argues it is not seeking redress for any false and deceptive representations that MCI may have made concerning comparisons in prices of AT & T and MCI products. Cole Aff. at

¶ 4. However, AT & T is seeking damages and injunctive relief for the misrepresentations involving the telemarketing claims in the New Jersey Action.

practices and slamming (the "Jacoby Study"). The Jacoby Study concludes, based on a statistical analysis of a sample of former AT & T customers, between 13.4% and 16.0% of the customers switched from MCI to AT & T were the victims of slamming. Jacoby Cert. at ¶ 11. The Jacoby Study further states 9.4% of those customers were switched as a result of the alleged misrepresentations of MCI. *Id.* at ¶ 13.

Relying on the Jacoby Study, AT & T extrapolates that unauthorized switching represents between 58.77% and 62.99% of the unlawful activity at issue in this action. 12 April 1990 Letter–Brief at 2. AT & T concedes, however, there is a possibility of duplicative recovery between the New Jersey Action and the District of Columbia Action but contends this possibility will exist whether this case is transferred or retained.[23] AT & T Supp.Brief at 8 n. 2.

As indicated by MCI, the slamming claims and misrepresentation claims are not as separable as AT & T argues. Many of the certifications prepared by AT & T's counsel and submitted in support of its motion for a preliminary injunction in the New Jersey Action contain allegations of both slamming and misrepresentations or some form of direct communication between the customer and a representative of MCI. 18 April 1990 Letter at 2 (citing Exhibits in Axelrod Supp.Cert.). Additionally, the Jacoby Study does not indicate the extent to which the victims of misrepresentation were impacted by the advertisements at issue in the District of Columbia Action. This lends support to MCI's argument that in assessing the relief sought in this case, the complete mix of promotional activity at issue is relevant. The assessment of the amount of profits either AT & T or MCI would have to disgorge if found liable of misrepresentation would be facilitated if the same court presided over this portion of the case.[24]

A determination that transfer to another jurisdiction is appropriate represents an " 'exercise[ ] of structured discretion by trial judges appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum rather than another.' " *Lony,* 886 F.2d at 632 (quoting *Pain v. United Technologies Corp.,* 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)). Added to that are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora.

In this case, the interests of justice, judicial administration and economy weigh heavily in favor of transfer to the District of Columbia. The retention of jurisdiction over the New Jersey Action would cause needless waste of judicial resources, not to mention the loss of time and expense to the parties who will have to litigate related disputes in different fora. The facts that the relatedness issue will be litigated again in opposition to MCI's suggested defenses, and at the damages phase after that, are important data in making this determination. The interests of justice, judicial administration and economy compel the result that one district court preside over these cases. Those interests are further enhanced by transfer to the District of Columbia because it will permit one appellate court to review the misrepresentations at

23. In an attempt to minimize the relationship between the two cases, AT & T argues the duplicative recovery issue will be present whether this proceeding retained in this jurisdiction or transferred to the District of Columbia. AT & T Supp.Brief at 8 n. 2. However, that argument does not render the issue immaterial. In fashioning equitable or legal relief in this action, the issues and outcome of the District of Columbia Action will be relevant. That this may be a problem for one judge does not mean it would be less difficult for two judges in different districts each with a full understanding of only a portion of the issues. The problems associated with avoiding duplicative recovery will only be exacerbated by having two judges rather than one attempt to form a remedy. Transfer will also impact this issue by permitting one appellate court, rather than two, to review these related cases on appeal.

24. To that end, the parties have discussed the feasibility of having one judge hear both cases in the different fora. This arrangement may have some superficial attractiveness, but it is contrary to the purpose of section 1404(a).

issue and the remedy which will be awarded.

To the extent the related case doctrine favors transfer of the New Jersey Action to the District of Columbia, that factor heavily outweighs the private interests of AT & T in maintaining the New Jersey Action in New Jersey. As well, the inconvenience to AT & T is not great; it has not objected to the District of Columbia forum in the litigation pending there. Accordingly, the motion of MCI to transfer the New Jersey Action to the District of Columbia is granted.

### III. CONCLUSION

For the foregoing reasons, the New Jersey Action is transferred to the District Court for the District of Columbia. Because of the transfer, I decline to rule on the motions for dismissal which are based upon the grounds of preemption and reference to the FCC. These motions may be presented to the transferee court.